**HARTMAN v. UNITED STATES.**

No. 14762.

United States Court of Appeals,
Eighth Circuit.
July 26, 1954.

William J. Becker, Clayton, Mo., for appellant.

Robert C. Tucker, Asst. U. S. Atty., St. Louis, Mo. (Harry Richards, U. S. Atty., St. Louis, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is taken to reverse a judgment of conviction upon jury verdict finding defendant guilty on both counts of a two count indictment charging attempted evasions of income taxes by false income tax returns for the years 1945 and 1946, respectively, in violation of 26 U.S.C.A. § 145(b).

The substance of the charge of the first count,[1] was that the defendant had received two specified items of taxable income in the year 1945 which he wilfully and fraudulently omitted from the income tax return made by him for that year in an attempt to "defeat and evade" that part of the income tax due from him in respect to those items for that year. The second count charged in similar language that he had received a certain $12,000 item of taxable income in 1946 which he wilfully omitted from the income tax return he made in that year in an attempt to "defeat and evade" that part of the income tax due from him in respect to that item for that year.

The two transactions involved in the first count were distinct and independent of the transaction involved in the second count and separate penalties were imposed in respect to each count. The two counts must be separately considered on this appeal.

*The First Count Covering The Two Items in 1945.*

It appears that in the year 1945 the defendant did not keep any books to show his individual income. He had his individual bank books and cancelled checks which he had turned over to internal revenue agents shortly after the end of the year, but some of them had been lost and were not available at the trial which did not take place until 1952. He was the owner in 1945 of substantially all the stock of a corporation known as Hartman Corporation of America and was engaged in operating it as its managing officer and received a salary from it. He also had income from rents and from his operation of a partnership business. His personal income tax return for the year filed with the Collector of Internal Revenue showed an amount of salary received, also an amount of rents received and an amount received as partnership income. The prosecuting attorney stated at the opening of the trial that the income tax return which defendant had filed was taken as true so far as those elements of his income were concerned. But defendant was also the owner of substantially all the stock and was the managing officer of a corporation known as Hunter-Hartman Corporation. It had originally belonged half to one Hunter

---

1. The wording of the first count was "The Grand Jury charges:

"That on or about the 15th day of March, A. D. 1946, within the Eastern Division of the Eastern Judicial District of Missouri, and within the jurisdiction of the Court aforesaid, Milton D. Hartman of Ladue Village, Missouri, who, during the calendar year 1945, had two (2) dependents, did Wilfully, Knowingly, Unlawfully and Feloniously attempt to defeat and evade a large part of the income tax due and owing by him to the United States of America for the calendar year 1945 by filing and causing to be filed with the Collector of Internal Revenue for the First Internal Revenue Collection District of Missouri, at St. Louis, a false and fraudulent income tax return, wherein he stated that his net income for said calendar year was the sum of Thirty-one Thousand Seven Hundred Eighty-four Dollars and Sixty-three cents ($31,784.63), and that the amount of income tax due and owing thereon was the sum of Fourteen Thousand Three Hundred Thirty-five Dollars and One cent ($14,335.01), whereas, as he then and there well knew, his net income for the calendar year was the sum of Forty-nine Thousand Six Hundred Thirty-two Dollars and Fifty-five cents ($49,632.55), determined as follows:

| | |
|---|---:|
| Salary | $22,828.51 |
| Rent | 12,912.01 |
| Net loss from operation of Milton Hartman Stables | (7,327.58) |
| Loss on sale of property other than capital assets | ( 951.50) |
| Partnership income | 6,625.17 |
| Other income | 3,930.00 |
| | 13,927.92 |
| | |
| Adjusted gross income | 51,934.53 |
| Deductions | |
| Contributions | 875.00 |
| Taxes | 1,426.98 |
| Total Deductions | 2,301.98 |
| | |
| Net income | 49,632.55 |

upon which net income he owed to the United States of America an income tax of Twenty-six Thousand Nine Hundred Forty-nine Dollars and Forty-two cents ($26,949.42). In violation of Section 145(b), Internal Revenue Code, 26 U.S.C., Section 145(b)."

and half to defendant Hartman, but Hunter was called to military service and sold his share to Hartman. During 1945 the Hunter-Hartman Corporation was practically inactive and was referred to as dormant. Defendant managed its affairs but was not entitled to and did not receive any salary from it.

The accusation under the first count of the indictment was that in 1945 defendant caused a sum of $3,930.00 belonging to said Hunter-Hartman Corporation in the form of a credit to it in that amount in its bank account to be transferred to his own individual credit in his personal bank account and that he thereby received net taxable income in that amount. That defendant also in the same year caused a sum of $13,927.92 belonging to Hunter-Hartman Corporation in the form of a credit to it in its bank account to be transferred to his own personal bank account and thereby received net taxable income in that amount.

Mr. Hagerty, the expert accountant who testified for the government, said that notwithstanding defendant was practically the owner of the Hunter-Hartman Corporation, his transfer of its funds to himself constituted net income to him because the capital structure of the corporation remained unchanged during 1945 and 1946. When defendant was asked by the investigating revenue officer if it did not occur to him that a transfer of the corporation's funds to his personal credit would constitute a gain that would be taxable to him, he answered that he understood now that it would but it did not appear that way to him before. The defendant testified on his own behalf and it is evident from his testimony that at the time he testified he was convinced that a transfer by him of any of his corporation's funds to his personal bank account would, without more, constitute receipt by him of taxable income. The case was tried on that theory and for the purposes of this review it is assumed that any transfer by defendant of his wholly owned corporation's funds from its bank account to his own individual bank account constituted receipt of taxable income by defendant in the amount of the transfer.[2]

The government also charged under the first count that defendant wilfully concealed the fact that he had received the said two items of income from his Hunter-Hartman Corporation by causing that corporation's books to be made up in such a way as to conceal the transfer of the items from the corporation to himself. And that he wilfully caused those two items of his income to be omitted from his income tax return for the year in an attempt to evade the tax due in respect to them.

It appeared on the trial without any dispute that the defendant did in the year 1945 effect a reduction of a claim for rent that was made against Hunter-Hartman by its landlord. The corporation vacated premises it occupied under a lease and the landlord sued for the rental for the whole term. But a new tenant was obtained and the landlord's claim was reduced. The reduced amount was paid to the landlord but defendant caused the whole amount of the claim to be checked out of the corporation's bank account and the difference between the amount sued for by the landlord and the amount actually paid to and accepted by the landlord to be deposited in a bank to defendant's personal credit. The amount of the difference was $2,555.90 and that was the first item charged in the first count to have been taxable income received by defendant and wrongfully omitted from his return.

It also appeared on the trial without any dispute that the Hunter-Hartman Corporation's books showed that corporation to be indebted to Chicago Transformer Company on open account in the sum of $13,927.92 and defendant effected a compromise settlement of that debt by paying the creditor $3,500. He caused the difference, amounting to $10,427.92, which was withdrawn from Hunter-Hartman Corporation, to be deposited to his

---

2. No question as to that theory is presented for review.

own credit in his personal bank account. The amount of that difference was the second item charged in the first count to have been taxable income received by defendant and wrongfully omitted by him from his return.

The defendant made no denial at the trial and concedes here that he did take the two amounts of $2,555.90 and $10,427.92, each being the difference between a claim against Hunter-Hartman Corporation and the lesser amount he settled the claim for, from the funds of the Hunter-Hartman Corporation in 1945 and caused them to be deposited to his own credit in his bank account. He also admitted on the trial, and now admits, that neither of said amounts was included in his income tax return.

His defense was that both of his corporations, Hunter-Hartman Corporation and the Hartman Corporation of America, employed bookkeepers and certified accountants who were fully informed of and kept complete accounts of all the business transactions and that for many years he had relied confidently upon them to prepare his individual income tax returns for him. That he had never attempted to make out an income tax return for himself and would not know how to go about it. That they made out his return for 1945 for him in the same way they had always done and he did not even examine it to see whether it included the two items in question in the first count or not, but signed it as it was presented to him in the place indicated for him to sign. That if the two items ought to have been included in the return the omission was not through any intention on his part to defeat or evade tax and that he never had any such intention. As to the entries that were made in the books of his corporations, defendant testified that he informed his bookkeeper and the accountants of the facts of his transactions but left it entirely to them and never gave any direction concerning what book entries should be made to record the transactions. They made all the entries and none was found in his handwriting.

The bookkeeper and accountants whom defendant employed to make out his income tax return were witnesses for the government but they corroborated him to the extent that they took full responsibility for making out his income tax return for him for 1945 and obtaining his signature thereon. There was no evidence that he gave any direction or made any suggestion that the return should be falsified in any respect. The certified public accountant who actually made out the return explained that he knew defendant drew no salary from the Hunter-Hartman Corporation and that that corporation was practically dormant and in making up defendant's income tax return he had simply failed to check that corporation's books with reference to any transfers from it to defendant. He testified "I was acquainted with the fact defendant was not receiving any salary from the Hunter-Hartman Corporation and I saw no reason to look at the books of the Hunter-Hartman Corporation." There was controversy as to whether defendant had caused those books to be made up in such a way as to conceal the transfer of the items of the first count.

But on the whole relevant evidence the issue for the jury on the first count was a very narrow one. In view of defendant's own showing that he had caused the two identified items of Hunter-Hartman Corporation funds to be transferred to his individual credit and that neither of the items were included in his income tax returns, the remaining question was whether defendant had violated the statute in respect to one or the other or both of the items. And on the face of the record here that issue appears to have been a genuine one which defendant was entitled to have tried on competent evidence that was relevant to it.

■ Even though it be assumed that a taxpayer who withdraws corporate funds from his wholly owned corporation and deposits them to his individual account does thereby receive taxable income in the amount so withdrawn and deposited, that conclusion is not one that is so obvious or self-evident that nobody

could have erred in respect to it without criminal intent. On the contrary, it is obvious that a man may obtain no more actual gain by taking from his wholly owned corporation and putting into his personal bank account than by taking from one pocket and putting into another. The issue under the first count was whether or not the defendant, knowing that one or both of the two items were taxable income received by him, wilfully attempted to evade the tax by concealment and fraudulent omission of the items from his tax return.

Appellant seeks reversal of the conviction on the first count on the grounds (1) that the trial of that count was not confined to the issues but that prejudicial irrelevant testimony was adduced and received over his objections; (2) that vitally important testimony offered in his defense was erroneously excluded and that (3) an erroneous instruction was given to which exception was duly taken.

### 1. As to Prejudicial Irrelevant Testimony Received.

(1). In support of his first contention, appellant invokes the elemental rule of law that a defendant is entitled to be tried "only for the offense charged" against him, and he contends that the rule was not observed on the trial under the first count. He presents that the prosecutor adduced a mass of testimony against him which tended to arouse suspicion that he had been guilty of misconduct in respect to his income taxes and to excite prejudice against him, but which did not tend to prove the charge of the count and was irrelevant. Though the court warned the prosecutor at the opening of the trial against bringing such testimony into the case appellant claims that so much of such testimony was adduced and received over his objection as to distract the attention of the jury from the issue and he did not receive a fair trial on the real issue presented.

The trial was lengthy and much of the testimony for the government was given by accountants who had studied the books kept for defendant's corporations and partnership and gave their expert opinions concerning inferences to be drawn from the entries.

On the first submission of the appeal we had difficulty in appraising the significance and relation to the issues of much of the testimony included in the record and a rehearing was had on the question, among others, "Was incompetent prejudicial evidence received?"

In response to that question counsel for defendant compiled from the record a long list of matters on which the government adduced evidence which was received over objection and which it is claimed was irrelevant and prejudicial. Though some of the matters were plainly of small moment and the jury would not have been affected by them, consideration of the whole list compels the conclusion that error occurred in the trial on the first count in receiving inadmissible prejudicial evidence adduced for the government and duly objected to by defendant.

(a) Without going into all particulars we note that at the outset of the trial in his opening statement to the jury when the prosecutor undertook to explain the accusation against defendant and clarify it beyond the somewhat confusing verbiage of the indictment, he introduced the matter of a family partnership defendant had organized which would channel some of the profits of war contracts into the pockets of members of defendant's family (father, grandfather, wife, etc.) who were taxable in the lower brackets. The prosecutor indicated that the family partnership was a mere sham existing on paper only and was a device to defraud the government of taxes. The defendant objected that the matter of the family partnership was not within the scope of the indictment and that evidence concerning his family partnership was irrelevant and prejudicial. His objections were overruled and from the outset to the end of the trial the prosecutor kept the matter of defendant's family

partnership constantly before the jury notwithstanding defendant's objections.

■ The formation of family partnerships to result in less income tax to the government than it would get without them has created a wide, fertile field for specialists in tax law and given rise to many problems for the courts. Those problems are worked out laboriously in many opinions. But the run of laymen on a jury cannot be expected to fairly appraise the legality or illegality of such organizations. If defendant here had been indicted for tax fraud in connection with the formation and carrying on of a family partnership to evade income tax, such offense could have been specified and an issue in respect to such charge which could have been framed, rendered understandable and passed on by the jury. But here, as pointed out, the charge of the first count was simply that defendant had received two certain items of taxable income from his Hunter-Hartman Corporation and had attempted to evade the tax in respect to those two items. There was no relation in fact or logic between defendant's taking the two items and failing to return them and his organizing and carrying on his family partnership which increased the number of taxpayers in respect to government war contract profits. The inevitable effect of injecting a mass of expert, highly technical evidence about defendant's formation and carrying on of a family partnership to reduce income taxes could only be to distract the attention of the jury from the issue they had to try and was necessarily prejudicial to defendant. There are many pages of the record directed entirely to the matter of defendant's family partnership and lengthy examinations of witnesses as to salaries and payments to members of defendant's family and as to tax returns made by them. The partnership profits ran into hundreds of thousands of dollars and the matter must have engaged the jury's attention. But none of it could be fairly related to the issue that was for trial. Whether or not the family partnership as carried on worked a fraud on the government, as claimed, was irrelevant and did not tend to throw any light on the issue that was for trial. The government's persistent introduction of evidence concerning the family partnership prejudiced defendant and prejudicial error resulted.

■ (b) As has been indicated, the qualified accountant whom the defendant employed to make out his income tax made his determination of the amounts of income that were received by defendant during each of the tax years 1945 and 1946 from the books that were kept under the accountant's own direction. He failed to include the two items of count one that were transferred from the Hunter-Hartman Corporation to defendant's account. He simply failed to check that corporation's books for the year for the purpose of making out the return. The revenue agent accountant who had most to do in preparing the case against defendant for trial testified at length concerning the book entries relating to the two items and then he was asked if in his opinion there was additional income which defendant received during 1945 and failed to return which was not included in the charge of the indictment. Defendant interposed appropriate objection to the interrogatories, but the witness was permitted to give his opinion that defendant had additional income in 1945 of $54,218.88 which he failed to return in that year.

As to the introduction of that testimony, counsel for the government stated that he knew and admitted that it was "immaterial and probably incompetent". He argued that he was entitled to bring it out by reason of questions that had been put to the same witness by defendant.

But the record does not disclose any questions asked the witness by defendant's counsel that justified the introduction of this irrelevant and damaging evidence against the defendant. He was charged with a certain offense and was then confronted with the opinion of the government officer that he was guilty of other additional unrelated offenses.

It was plainly error to submit that opinion of the agent for the consideration of the jury. It cannot be doubted that the opinion expressed by the officer would carry weight with the jury and it must be held that the error in receiving it was prejudicial.

■ (c) Extended testimony was received over defendant's objections relating to expense accounts. The matter was foreign to anything charged in the first count of the indictment, but the government undertook to show by the testimony of the bookkeeper and accountants that beginning in 1943 defendant had caused "expense books" to be opened to record expenses incurred by members of defendant's family in connection with services rendered by them and that although defendant only reported the totals of such expenses, allotments were arbitrarily made to travel, meals, entertainment, etc., so that totals were balanced. The testimony was adapted to cause the jury to believe that defendant had been cheating on his expense accounts over the years and such was the only inference to be fairly drawn from it. The matter of cheating on expense accounts is a well known fraud and the testimony about it in the record here stands out conspicuously from the mass of technical accounting evidence. It could not have had any other effect on the trial than to prejudice the jury against defendant and divert attention from the issue.

■ (d) The government also introduced evidence over defendant's objection for the purpose of showing that defendant had caused two persons who were on his corporation's pay roll to do work around his private residence; that certain repairs to the residence were charged to the corporation; that defendant withdrew sums of money from the petty cash account and directed expense vouchers to be made up to cover the amounts. It also introduced evidence that during the fiscal year ending February 1945, defendant's family partnership had set up on its books a catalogue expense of $3200 and an expense account for a survey of $7500. These expenses were ultimately not actually paid out but as the partnership was on an accrual basis the amounts appeared to be deductible for tax purposes for that year.

Each of these matters was irrelevant to the issue and defendant's objection should have been sustained in each instance.

■ It need not be decided that some particular item of the irrelevant testimony was of itself so prejudicial as to necessitate reversal. The cumulative effect of the mass of evidence outside the scope of the indictment that was brought into the trial was to obscure the issue and to permit conviction that may well have been based on the general character of defendant. As has been stated, the first count charged defendant with omitting two specific taxable items of income from his 1945 income tax return in attempting to evade the tax in respect to those items. The proof ought to have been confined to that charge. Instead the testimony and massed documentary evidence ranged over the whole field of defendant's business affairs. Although it has been argued here that the extraneous matter was admissible to establish intent, the record does not support that justification of the admissions in evidence. In order for wrongful acts not included in a charge to be admissible to prove intent they must be of such a character that as a matter of logic they tend to demonstrate a criminal intent in the acts within the charge. Wolcher v. United States, 9 Cir., 200 F.2d 493.

Here none of the great mass of documentary and oral evidence concerning defendant's family partnership, its organization, its personnel or the conduct of its affairs tended to throw any light on the issue of count one; nor did the extended evidence about defendant's handling of expense accounts. Nor the opinion of the revenue agent that defendant had attempted to evade other thousands of dollars of taxes than those he was charged with attempting to evade. The over-all effect of the mass of evidence extraneous to the issue was to al-

low the jury to suspect that defendant was a bad character. His right was to be tried for the specific offense charged against him.

2. *As to Material Testimony Excluded.*

■ (a) On his direct examination, defendant was asked to explain what expenses were incurred in 1943 which necessitated the opening of the "expense books" previously testified to by the government witnesses. Objection was sustained on the ground that the books of the corporation would be the best evidence. Defendant should have been allowed to answer. Although testimony concerning the expense books should not have been admitted in the first instance, and the matter of cheating on expense accounts was irrelevant, after the government's evidence was received defendant should have been given opportunity to explain it away if he could.

(b) The defendant was further asked on his direct examination if he had relied on Mr. Nolte, the certified public accountant, to include all items of his income in his income tax return for 1945. Objection was sustained to his answer that he had so relied on the ground that "his reliance was a conclusion".

■ The defendant had admitted that he had caused the two items of $2555.90 and $10,427.92 covered by the first count to be transferred from the credit of his Hunter-Hartman Corporation to his own bank account and that his income tax return for the year did not include either of the items. His only defense, which was completely sufficient if he could establish it, was that he relied as he had done for many years upon the certified accountant he employed and that he had no intent to defeat or evade taxes. This court and others have consistently held that where the intent of the accused is in issue, he may testify as to what his intent was, Cummins v. U. S., 8 Cir., 232 F. 844; Buchanan v. U. S., 8 Cir., 233 F. 257; Haigler v. U. S., 10 Cir., 172 F. 2d 986; Miller v. U. S., 10 Cir., 120 F. 2d 968, and it must be held that the exclusion of defendant's answer that he

had relied upon his auditor, Mr. Nolte, who had prepared his income tax returns for many years, as well as for the year in question, was erroneous. Defendant's statement that he relied on his accountant bore directly on the vital issue and the exclusion of it from the jury's consideration was plainly very important and highly prejudicial. It is argued that it might be inferred from other parts of the record that defendant was claiming that he had relied on the accountant. But it was his right to have his direct and positive oath to that effect received in evidence and considered by the jury. The denial of that right must be held to be erroneous.

3. *As to the Instruction Claimed to be Erroneous.*

■ The court instructed the jury in part as follows:

"The duty to file the return is personal and cannot be delegated. Bona fide mistakes should not be treated as false and fraudulent, but no man who is able to read and write and who signs a tax return is able to escape the responsibility of at least good faith and ordinary diligence as to the correctness of the statement which he signs, whether prepared by him or somebody else."

The defendant took timely exception to the giving of the instruction and here contends it was erroneous.

The instruction was given in a criminal case on the trial of the charge that defendant violated Section 145(b) in that he did wilfully attempt to defeat and evade a tax due and owing by him to the United States by filing a false income tax return which he knew was false.

Therefore the statement that a man could not escape the responsibility of ordinary diligence as to the correctness of the statement which he signs meant in the connection in which it was used that the jury ought to convict defendant if they found he did not use ordinary diligence as to the correctness of his income tax return.

Such declaration of the law is directly contrary to that of the Supreme Court in

Spies v. U. S., 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418. In that case the court said, 317 U.S. loc. cit. 497, 63 S.Ct. loc. cit. 367, "The question here is whether there is a distinction between the acts necessary to make out the felony [under section 145(b)] and those which may make out the misdemeanor [under section 145 (a)]" and the court declared positively: "We think that in employing the terminology of attempt to embrace the gravest of offenses against the revenues Congress intended some willful commission in addition to the willful omissions that make up the list of misdemeanors. Willful but passive neglect of the statutory duty may constitute the lesser offense, but to combine with it a willful and positive attempt to evade tax in any manner or to defeat it by any means lifts the offense to the degree of felony." The charge of the indictment here that defendant attempted to defeat and evade his tax by filing a false return could not be made out by merely showing that he failed to use "ordinary diligence as to the correctness" of his return. The erroneous instruction was prejudicial.

### The Second Count.

Count two of the indictment charged that in 1946 defendant collected $12,000.00 constituting taxable income from the Hunter-Hartman Corporation on a fictitious account for engineering services which were never rendered and that he attemped to evade the tax by wilfully omitting the item from his return for that year. Evidence introduced by the government tended to show that a $12,000.00 check ostensibly drawn to pay an engineering account shown on the books of the Hunter-Hartman Corporation was actually deposited to defendant's account. Defendant offered evidence to prove that he received no part of the $12,000.00 but that the check, along with several others issued at or near the same time, was drawn and deposited at the direction of his accountants in order to clear up existing equities shown on the books of the corporation. Or, in other words, that it was a "wash out" transaction and that he received no money. Thus the question whether income resulted to defendant by reason of the issuance of this check was a question of fact to be resolved by the jury.

But this second count like the first count presented a concrete genuine issue upon which defendant had the right to a trial confined to the issue.

On this appeal it is contended as to the second count (1) that prejudicial irrelevant testimony was received over defendant's objection, (2) that vitally important testimony was erroneously excluded and (3) that an erroneous instruction was given to which exception was duly taken.

All of its evidence was presented by the government on the trial of the case without specifying whether it was related to the first count or the second and that course has increased the difficulty of appraising the relation of much of the evidence to the indictment charges. But study of the record convinces that much of the evidence received was even less relevant to the second count than it was to the first. Only one single item of alleged income is involved in the second count and the testimony which has been pointed out as irrelevant and prejudicial as to the first count is equally so as to the second.

Whether or not defendant's family partnership was a sham or a means to cheat the government of tax; the opinion of the government agent that defendant attempted to evade more tax than he was accused of in the year 1946; the many items of evidence that were aimed to show general bad conduct on defendant's part, all of which were found to be irrelevant as to the first count were also inadmissible on the second.

We think there was the same error in the receiving and exclusion of evidence as to the second count and also as to the instruction given and excepted to.

The judgment is therefore reversed as to both counts and the case is remanded for new trial in accord with this opinion.