UNITED STATES of America,
Appellee,

v.

Dale Ray HALEY, Appellant.

UNITED STATES of America,
Appellee,

v.

Steven Paul LILEY, Appellant.

UNITED STATES of America,
Appellee,

v.

Charles Lee MILLER, Appellant.

UNITED STATES of America,
Appellee,

v.

Donald Lee OLENCHAK, Appellant.

UNITED STATES of America,
Appellee,

v.

Roger Lee SHEEHAN, Appellant.
Nos. 71–1183, 71–1208 to 71–1211.

United States Court of Appeals,
Eighth Circuit.

Nov. 15, 1971.

Certiorari Denied March 6, 1972.
See 92 S.Ct. 1205, 1206.

Name of counsel making argument for
appellant, Haley  (Case Nos. 71–1183 and
71–1192), is Paul E. Watts, Omaha, Neb.

Name of counsel making argument for appellants, Liley, Miller and Olenchek (Case Nos. 71–1208, 71–1209 and 71–1210), is Douglas W. Thomson, St. Paul, Minn.

Name of counsel making argument for appellant, Sheehan (Case No. 71–1211), is Bruce Hartigan, Minneapolis, Minn.

Name of counsel making argument for appellant, Smith (Case No. 71–1191), is Paul E. Watts, Omaha, Neb.

Peter J. Thompson, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before JOHNSEN, GIBSON and LAY, Circuit Judges.

PER CURIAM.

Defendants Roger Lee Sheehan, Donald Lee Olenchak and Charles Lee Miller were convicted on six counts of illegally selling narcotic drugs not in pursuance to a written order in violation of 26 U.S.C. § 4705(a). They were also found guilty on five counts of illegally selling narcotics knowing the same to have been illegally imported into the United States in violation of 21 U.S.C. § 174, and together with two other defendants, Steven Paul Liley and Dale Ray Haley, were convicted under 18 U.S.C. § 371 on a separate count of conspiring to sell narcotic drugs. Each defendant has filed an appeal. We affirm the judgments of conviction.

The chronology of events may be briefly stated. In early April 1970 defendant Steven Liley, a member of the Hell's Angels, a motorcycle club in Minneapolis, Minnesota, his brother Thomas, an undercover agent, and two other government informants met with Roger Sheehan, a vice-president of the Minneapolis Hell's Angels, in Minneapolis. The men discussed and negotiated the purchase of one-half pound of heroin coming from Omaha, Nebraska. The Lileys and special agent James McDowell were to drive from Minneapolis to Omaha to purchase the drugs from the Omaha Hell's Angels. At that meeting Steven Liley stated that Sheehan furnished the drugs for the

Hell's Angels of Minneapolis, obtaining them from Oakland, California. On April 21, 1970, the evidence shows Steven Liley picked up heroin from defendants Dale Ray Haley and Roger Levell in Omaha. One ounce of this heroin was sold by Steven Liley in an Omaha motel to special agent Jack Walsh who was posing as a bookie. Defendant Liley stated at that time that "his people" were in California picking up more drugs and would drop some off in Omaha. The record shows a few days prior to this conversation, on April 18, 1970, defendant Donald Lee Olenchak had wired $800 to Oakland, California, for defendant Roger Sheehan.

On June 18, 1970, an addict by the name of Daniel DeGuisseppi sold two packets of cocaine to agents at their Minneapolis undercover office for $300. DeGuisseppi stated he had purchased the cocaine earlier that day from defendant Donald Lee Olenchak for some $270. Olenchak later admitted this. DeGuisseppi testified that he had purchased cocaine and heroin from defendants Donald Olenchak, Charles Miller and Steven Liley on numerous other occasions, including one in which he purchased some cocaine from Liley and together they rode over to Sheehan's house to pick it up. In that same month of June, the special employee, Thomas Liley, heard from Miller that Sheehan had set up the Hell's Angels heroin business for Miller and Olenchak and the cocaine business of the Angels went to Steven Liley and one Ray Brown.

Beginning in late June and for a period of several weeks thereafter, negotiations and sales between the defendants and the agents continued at a quickened pace. On June 28, 1970, three defendants met with the agents and special employees and negotiated an initial price of $1,300 an ounce for the heroin which was expected to arrive the next day. The following evening, as planned, Olenchak, Miller and Steve Liley delivered one ounce of heroin to the agents for $1,000. Miller gave agents a note with his name and phone

number on it. Olenchak guaranteed the quality of the heroin. On July 6, 1970, Miller and Olenchak sold agents five "spoons" of heroin for $650. Olenchak said his man would leave for the cocaine the next day. On July 7, 1970, Roger Sheehan flew to Oakland, California, where his wife wired him $1,000. On the 7th, Olenchak called an agent and told him that the heroin was in and the cocaine would arrive in several days. That evening defendants Olenchak and Miller transferred some five ounces of heroin to agents Mulhauser and Walsh.

The next day Miller went to the Minneapolis airport and met a flight from Omaha carrying defendant Haley. Before returning to Omaha, Haley received a large quantity of money from Miller, some of which was later found to be the government's money from the previous heroin sale. Upon arriving in Omaha Haley was met by Roger Levell. That afternoon Levell and his wife purchased tickets for a flight to Oakland, California, using cash paid by the agents on the previous evening's purchase of heroin. Levell and his wife returned the next day.

In August when the agents confronted defendants about the quality of the drugs that had been supplied, defendants retorted that there had been no complaints in the past and that they guaranteed the quality of the drugs. As if to prove the point, defendant Olenchak left and returned with one-half ounce of uncut heroin which he sold to agent Mulhauser for $1,000. Upon analysis this heroin was found to be 51.4 percent pure. Sheehan then stated his function was to travel to the West Coast, maintain contact with their source of supply for drugs, and return and distribute the drugs to local members and that he would bring back suitcases of drugs at a time.

On September 15, 1970, Miller introduced agent McDowell to defendants Haley and Levell in Omaha; they thereupon sold two ounces of heroin to the

agent for $2,200. Defendants Haley and Levell told McDowell that they handled the heroin business in Omaha. On October 14, 1970, agent McDowell and special employee Thomas Liley flew to Omaha where they purchased three ounces of heroin from Haley and Levell for $2,550. All defendants were arrested on October 15, 1970.

The evidence as set forth shows that on the occasions described in the indictment, the government agents, posing as underworld figures, successfully made purchases of cocaine and heroin from the various defendants. All the defendants, except Sheehan, said these sales were the fruit of an entrapment. These defendants claim that Thomas Liley told them that "Fast Eddie," actually an undercover agent, had threatened to kill him unless he could pay back a $6,000 debt or provide the equivalent in dope. Since Thomas Liley was a brother of a Hell's Angels member, they agreed to help by obtaining the drugs. Thereafter, from April 1970 until the defendants' arrest in October 1970, many thousands of dollars worth of drugs exchanged hands.

Defendants bring to the court's attention two judicial viewpoints on the law of entrapment. One position recognized by the majority opinions in Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932) and Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), seeks to protect innocent persons from improper inducements of government agents to do criminal activity. Under this approach if the accused is given the mere opportunity to show his own bent for perpetrating criminal activity, even though inducements are employed, then the entrapment policy has not been violated. The predisposition of the accused to commit crime becomes a fundamental issue of the case. The minority view espoused by Mr. Justice Frankfurter in Sherman v. United States, supra, places little importance on any criminal disposition of an accused. Rath-

er, it seeks to discourage reprehensible governmental conduct.[1]

The Court in *Sherman* refused to accept the Roberts and Frankfurter notions of entrapment. 356 U.S. at 376, 78 S.Ct. 819. See also Masciale v. United States, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859 (1958). The Court declined a further dealing with the issue in Lopez v. United States, 373 U.S. 427, 434, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963), although Mr. Justice Harlan recognized that it had on past occasions "sharply divided" the Court. Thus, to the extent that the defendants embrace the minority positions of *Sherman* and *Sorrells* in asking for a finding of entrapment as a matter of law, they are speaking to the wrong court.

▮ The essence of the government's argument is (1) they did not entrap, since there was no inducement used, or (2) assuming the agents may be said to have used persuasion to get the defendants to commit the crimes, the defendants nevertheless possessed a predisposition to violate the law. Here the inducement was allegedly to pay back "Fast Eddie" for a debt in money or the equivalent of drugs. The government informer, Thomas Liley, denied that he told any of the defendants that his life had been threatened. The undercover agents admitted that they used artifice and stratagem, but they denied that they had threatened or led defendants to believe they threatened the life of Thomas Liley. Under these circumstances the conflicting evidence as to the existence of entrapment was a question for the jury. *McWilliams v. United States*, 394 F.2d 41 (8 Cir. 1968), cert. denied, 393 U.S. 1044, 89 S.Ct. 643, 21 L.Ed.2d 593 (1969); Taylor v. United States, 390 F.

2d 278 (8 Cir. 1968), cert. denied, 393 U.S. 869, 89 S.Ct. 155, 21 L.Ed.2d 137; Kibby v. United States, 372 F.2d 598 (8 Cir. 1967), cert. denied, 387 U.S. 931, 87 S.Ct. 2055, 18 L.Ed.2d 993; Rogers v. United States, 367 F.2d 998 (8 Cir. 1966), cert. denied, 386 U.S. 943, 87 S.Ct. 976, 17 L.Ed.2d 874 (1967); Cross v. United States, 347 F.2d 327 (8 Cir. 1965).

▮ It is asserted that the trial court committed error as to various comments, as well as in the admission of the government's evidence which indicated the commission of other crimes by the defendants and thereby prejudiced their rights to a fair trial. The government urges that the evidence was admitted either as proper rebuttal, or proof of intent or predisposition to commit the crimes. At the very most, the government asserts any extraneous evidence constituted harmless error. We find both strengths and weaknesses within the government's justifications of the comments and evidence. It would serve little purpose in our overall analysis to detail that which we believe was or was not admissible. The law in this area has received full amplification. See Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954); Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); Boyd v. United States, 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077 (1892); United States v. Lewis, 423 F.2d 457 (8 Cir. 1970), cert. denied, 400 U.S. 905, 91 S.Ct. 146, 27 L.Ed.2d 142; Kraft v. United States, 238 F.2d 794 (8 Cir. 1956); Kempe v. United States, 151 F.2d 680 (8 Cir. 1945), cert. denied, 331 U.S. 843, 67 S.Ct. 1534, 91 L.Ed. 1864 (1946); United States v. Novik, 124 F.2d 107 (2 Cir. 1941), cert.

1. Mr. Justice Frankfurter observed in Sherman v. United States, supra at 382–383, 78 S.Ct. at 826:
   "[A] test that looks to the character and predisposition of the defendant rather than the conduct of the police loses sight of the underlying reason for the defense of entrapment. No matter what the defendant's past record and present inclinations to criminality, or the depths to which he has sunk in the estimation of society, certain police conduct to ensnare him into further crime is not to be tolerated by an advanced society."
   Mr. Justice Roberts advanced a similar argument in Sorrells v. United States, 287 U.S. at 454–455, 53 S.Ct. 210.

denied, 315 U.S. 813, 62 S.Ct. 795, 86 L.Ed. 1212 (1942). Assuming arguendo error in some of the comments [2] and testimony, and weighing the overall effect of this error balanced against the testimony relating to the defendants' guilt as a whole, we conclude that at its worst, the error was harmless.

We turn to the fundamental question of "[W]hat effect the error had or reasonably may be taken to have had upon the jury's decision?" Kotteakos v. United States, 328 U.S. 750, 764, 66 S.Ct. 1239, 1247, 90 L.Ed. 1557 (1946).

This is a strong case. The overall evidence of the government witnesses concerning the commission of the *charged* offenses was not only corroborated by circumstantial proof, but in effect conceded by all of the defendants except Sheehan. The only defense of entrapment approaches the incredible. The scenario imagined is that the several defendants in two cities approximately 400 miles apart entered the narcotic business for the first time only because they wished to prevent physical harm to an unknown brother of one of the members of their Hell's Angels club. It is difficult to conceive that defendants were under such compulsion and inducement in their concern for the stranger, Thomas Liley, that they would travel to Omaha and the West Coast to obtain the drugs. During the time involved the defendants furnished over $15,000 worth of drugs to Mulhauser (the chief government agent). Liley's alleged debt was only $6,000. Since defendants received money for the drugs they supplied, they fail to make clear how they allegedly were "buying off" the threat to kill Liley. Under the circumstances we find the entrapment defense of the defendants was so weak that we conclude the nonrelevancy of the other crimes and their prejudicial effect, as well as any erroneous comments of the trial court, were not sufficient to have

swayed reasonable minds in reaching the verdict returned.

We fully recognize that in judging the issue of whether defendants had a fair trial, when the government deliberately engages in prejudicial proof it may be estopped to deny the prejudicial effect on the jury regardless of the strength of its case. United States v. Crawford, 438 F.2d 441 (8 Cir. 1971); United States v. Dean, 435 F.2d 1 (6 Cir. 1970); United States v. Shumate, 139 U.S.App.D.C. 98, 429 F.2d 777 (1970). This did not happen here. The record demonstrates that the comments by the government witnesses inadvertently included references to other offenses. Several of the misstatements were not objected to. The evidence concerning the use of violence and contracts to kill was to some extent rebutting the defendants' cross-examination that the undercover agents threatened force. Furthermore, the government had a right to prove as part of the overall conspiracy that the defendants planned the use of violence to enforce their sales. This was part of their overall modus operandi. Devoe v. United States, 103 F.2d 584 (8 Cir. 1939), cert. denied, 308 U.S. 571, 60 S.Ct. 84, 84 L.Ed. 479; Matthews v. United States, 407 F.2d 1371 (5 Cir. 1969), cert. denied, 398 U.S. 968, 90 S.Ct. 2177, 26 L.Ed.2d 554 (1970); United States v. Phillips, 401 F.2d 301 (7 Cir. 1968); Collins v. United States, 383 F.2d 296 (10 Cir. 1967); United States v. Marquez, 332 F.2d 162 (2 Cir. 1964), cert. denied, 379 U.S. 890, 85 S.Ct. 162, 13 L.Ed.2d 94.

We now meet the individual claims raised by some of the defendants. It is asserted that the defense motion before trial to exclude government reference throughout the trial to the defendants' membership in the Hell's Angels Motorcycle Club should have been sustained. The recent publicity of an assault on a young girl by other Hell's

---

**2.** Defendant Haley raises a separate claim of error concerning certain comments of the court. One of the comments dealt with the "inexperience of the government

prosecutor" and the "three very experienced defense counsel." We agree with counsel that this comment was improper.

Angels members in Minneapolis was such, it is argued, that any reference to the defendants' membership in the club injected prejudice. It is also asserted that the name "Hell's Angels" inherently carries a bad connotation which the government took advantage of by unnecessarily bringing out the fact of each defendant's membership in the club and other activities of the club.

On voir dire, the record demonstrates the trial court sequestered individual members of the jury who had read of the assault. The court questioned each of these prospective jurors apart from the others, and they were all excused. Admittedly, some jurors might react to the defendants belonging to a group which in itself might portray evil activities. The trial court carefully examined the prospective jurors as to any adverse effect membership in Hell's Angels or that name alone might convey. The relationship of Hell's Angels members to one another, the inner club dealings, trips between the Minneapolis and Omaha chapters and Oakland, the club's national headquarters, were all relevant to the charge of an overall *scheme* to illegally sell drugs. Moreover, the fact of their membership in the Hell's Angels and their allegiance one to another was a focal point for the defendants' theory of entrapment. Under these particular circumstances we find the government was justified in showing the identity and relationship of the defendants to one another through their club membership.

It is incumbent on the trial court to avoid a prejudicial atmosphere as much as humanly possible in every trial. Yet a trial need not be so purified to prohibit all relevant, though indirectly prejudicial, facts. Under such circumstances the court's awareness of the problem by careful instruction is the best antiseptic against possible prejudice, short of mistrial. Though the advantage of hindsight might enable an appellate court to say that the trial should have been conducted in a different way, this does not empower a reviewing court to declare a new trial so as to make the next effort more per-

fect. Asserted error cannot be weighed in a vacuum. Under the evidence presented here, we conclude that the court's actions did not produce an unfair effect in influencing the jury's verdict.

■ During the course of cross-examination of the government agent, defense counsel for Miller and Olenchak asked the agent if he knew whether any of the defendants had ever made prior sales of narcotics. There was no objection by Sheehan's counsel. The agent answered yes. He was asked which one. Again there was no objection. The agent answered Roger Sheehan. Sheehan's counsel finally objected and renewed his motion for severance and a mistrial. These were denied. The evidence might have been admissible to show a predisposition had Sheehan raised the defense of entrapment. The government argues that the evidence was still admissible to show Sheehan's conspiratorial intent, except that it was not elicited for this purpose. Nor was there an attempt by the government to show the specifics of the prior offense. See Wakaksan v. United States, 367 F.2d 639 (8 Cir. 1966), cert. denied, 386 U.S. 994, 87 S.Ct. 1312, 18 L.Ed.2d 341 (1967); Hartman v. United States, 215 F.2d 386 (8 Cir. 1954); Paris v. United States, 260 F. 529 (8 Cir. 1919). Sheehan claims that he is protected from unfair testimony even though brought out by a co-defendant. DeLuna v. United States, 308 F.2d 140 (5 Cir. 1962). See United States v. Schroeder, 433 F.2d 846 (8 Cir. 1970), cert. denied, 401 U.S. 943, 91 S.Ct. 951, 28 L.Ed.2d 224 (1971). Assuming here for purposes of argument that objection was timely raised (which it was not) and the testimony was erroneous as to Sheehan, there exists no basis of reversal. Thereafter the trial court gave repeated admonitions to the jury to disregard evidence of other offenses. We conclude that there was no prejudicial error in refusing to grant Sheehan a severance or mistrial. There existed overwhelming direct evidence implicating Sheehan in numerous sales.

■ Defendant Haley, in a separate brief has raised several additional con-

tentions not previously discussed. He argues first that his acquittal in Iowa on two counts concerning importation and knowledge thereof (see United States v. Haley, 452 F.2d 398 (8 Cir.), destroys the United States' jurisdiction over the conspiracy involving the same sales charged in the Minnesota indictment. In effect he argues rather impractically for some retroactive finding of the Iowa verdict to defeat the exercise of prior jurisdiction in the Minnesota conspiracy trial.

We have rejected Haley's claim of double jeopardy by reason of the Minnesota conviction in affirming the judgment in the Iowa court. United States v. Haley, 452 F.2d 398 (8 Cir.). We likewise discussed the significance of Haley's acquittal of the two counts under § 174 as it affected his conviction in the Iowa federal court on two counts under § 4704(a) and § 4705(a). His argument there is essentially the same as he makes here, and we rejected it for the evident reasons set forth in our aforementioned opinion.

 Haley urges as well that the trial court instructed the jury during voir dire that "if one overt act is proved, all may be convicted of a conspiracy." It is argued that this is error. No objection was made by counsel at the time. Assuming defendant has shown good cause for failing to object (counsel asserts he was preoccupied studying the jury selection), we disagree that this constituted error. The axiom that instructions must be read as a whole no longer requires citation. We find on review of the instruction given at the time, as well as instructions given at the conclusion of the case, that the jury was fully informed that to convict for a conspiracy, there must be proof of a common scheme or agreement through which one may be associated with the overt acts carried out by others. See United States v. Hender-

son, 446 F.2d 960 (8 Cir. 1971) cert. denied, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed. 2d 543; United States v. Smallwood, 443 F.2d 535 (8 Cir. 1971) cert. denied, 404 U.S. 853, 92 S.Ct. 95, 30 L.Ed.2d 93.[3]

We conclude after full review of the record that any error occurring at trial was not so harmful to defendants' rights that it prejudiced a fair trial.

Judgments affirmed.

---

3. Haley also asserts error as to the court's instructions concerning entrapment. We have discussed the use of the identical instruction in United States v. Haley, 452 F.2d 398 (8 Cir.), and repeat our finding of no prejudicial error here. Nor do we find any abuse of discretion worthy of review in the sentence imposed as to Haley.