**UNITED STATES of America,
Appellee,**

v.

**Steven Elmer ROELL and Carrie Lee
Manning, Appellants.**

**No. 73–1331.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct 17, 1973.

Decided Nov. 12, 1973.

Sherman Bergstein, Minneapolis, Minn., for appellants.

John M. Lee, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before HEANEY, ROSS and STEPHENSON, Circuit Judges.

ROSS, Circuit Judge.

This appeal results from the joint trial and conviction, by a jury, of Steven Elmer Roell and Carrie Lee Manning. Roell was charged with violating the provisions of 21 U.S.C. § 841(a)(1) in a four count indictment, with the knowing and intentional distribution of cocaine on September 22, 1972, and September 25, 1972, and with the knowing and intentional possession of cocaine with intent to distribute on those dates. Manning was charged with knowing and intentional distribution of cocaine on Sep-

tember 22, 1972, and knowing and intentional possession of cocaine with intent to distribute on September 22, 1972. Roell and Manning were found guilty on all counts. We affirm the judgments of conviction.

Roell, with his partner, Thomas Johnson, owned and operated Stone Bleu, Inc. Manning was a secretary, and Johnson's fiance. Special Agent McDowell, of the Bureau of Narcotics and Dangerous Drugs (BNDD) purchased one ounce of cocaine from Roell at the Stone Bleu for $1,100 on September 22, 1972. At the meeting was Eric Zylman, a friend of Roell and an informant for the Government. Just prior to the sale, Manning brought the drug to the Stone Bleu and gave it to Roell. On September 25, 1972, Agent McDowell and Agent O'Connor purchased an additional ounce of cocaine from Roell at the Stone Bleu, paying $1,100. Neither Zylman nor Manning were present at this transaction. Roell was arrested on November 10, 1972, and Manning was arrested on November 21, 1972.

At trial Roell contended that he was entrapped by Zylman. Manning contended that she was not aware that the substance she transferred was cocaine. On appeal Roell and Manning claim: the trial court erred in refusing pretrial disclosure of the identity and location of the informant Zylman and subsequently erred in allowing him to testify for the Government in rebuttal; the trial court erred in restricting cross-examination, direct examination, and closing argument; the trial court erred in refusing to grant Manning a separate trial; the trial court erred in denying a motion for mistrial; and the trial court erred when it made certain statements in the presence of the jury.

## I. *Zylman*

■ The defendants, before trial, requested the identity and location of the Government's informant relying on Roviaro v. United States, 353 U.S. 53, 77 S. Ct. 623, 1 L.Ed.2d 639 (1957). The mo-tion was denied, and they now claim that the denial of this motion prejudiced them. It is clear that Zylman was instrumental in effecting the sale of the cocaine on both September 22, 1972, and September 25, 1972, although Zylman was not present at the September 25, 1972, sale.

This Court recently held, in United States v. Barnes, 486 F.2d 779 (8th Cir., 1973), that:

We think it clear from the cases decided since *Roviaro* that where the witness is an active participant or witness to the offense charged, disclosure will almost always be material to the accused's defense.

But the *Barnes* Court recognized that where the witness is produced at trial and the defendant is given an opportunity to cross-examine, no prejudice results. The *Barnes* Court further recognized that where the defendant already knows the identity of the informant, prejudice may not result. This Court in United States v. Woods, 486 F.2d 172 (8th Cir., 1973), recently held that no prejudice resulted when the Government failed to disclose the identity of the informant, but produced the informant at the trial, and the defendant was able to cross-examine the informant. The Court further noted that a motion for continuance was available in the *Woods* case had defense counsel been caught unprepared to cross-examine. This case is much stronger than the *Woods* case with respect to the validity of the Government's assertion that the defendants were not prejudiced.

The following factors should be noted:

1. During the cross-examination of the Government's first witness it became apparent that the defendants knew the identity of the informant, as counsel expressed an intimate knowledge of the informant's arrest for possession of marijuana.

2. Early in the defendants' presentation of evidence, the Government identified the informant, stated

that he was a University of Minnesota student, and indicated that the informant could be called by defendants.

3. Defense counsel made it clear that on Friday before the trial started on the following Monday that he suspected who the informant was. In closing argument, counsel stated: "Last Friday when we got some papers from the U. S. District Attorney we were able to figure out that Eric Zylman probably was the Government informant * * *."

4. Defense counsel presented the Court with information that Zylman had previously been arrested for possession of some 450 pounds of marijuana, and that he had not yet been tried. The court so advised the jury.

5. At the close of defendants' evidence defense counsel was told that Zylman would be called by the Government in rebuttal, and, after the noon recess, a period of one and one-half hours, Zylman was called. Defense counsel made no motion for a continuance. Nor did defense counsel move for a continuance when he began to cross-examine Zylman. When defense counsel was told the name of the informant, he did not move for a continuance, but simply said: "It's a little late for that disclosure and the disclosure is relatively incomplete at this point."

6. During the closing argument defense counsel stated that "[T]hey surprised us and brought him in to testify—I was surprised they brought him in to some extent, *but I wasn't surprised at his testimony.*" (emphasis added).

7. Roell and Zylman were friends, and Zylman visited Roell *after* Roell had been arrested. [At that time Roell did not know that Zylman was the informant.]

Under these circumstances Roell and Manning were not prejudiced by the failure to disclose the identity of Zylman, or the Government's calling Zylman as a rebuttal witness.

II. *Restriction on Examination, Cross-examination, and Closing Argument.*

Roell and Manning claim that they were unfairly restricted in the examination and cross-examination of witnesses, and in closing argument. We have examined the record carefully and have found no abuse of discretion on the part of the trial judge with respect to the examinations, and have found no prejudicial error with respect to his rulings on the closing argument. *See* United States v. Crawford, 438 F.2d 441, 444 (8th Cir. 1971); United States v. Leach, 429 F.2d 956, 964 (8th Cir. 1970), cert. denied, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151 (1971).

a. Failure to allow cross-examination to determine whether Manning was arrested to force Roell to become an informant.

■■ *Roell* was arrested on November 10, 1972, and Manning was arrested on November 21, 1972. Roell claims that had he been able to pursue Agent McDowell and Agent O'Connor as to their subjective reasons for arresting Manning, he would have been able to show that Manning was arrested in order to pressure Roell into becoming an informant, thus buttressing the entrapment defense.

First, although counsel was generally restricted from asking the agents why they arrested Manning, at least once, counsel asked:

Q. You didn't arrest Miss Manning because she committed any offense that you knew of, did you?

A. That's untrue.

The question and answer were not objected to, nor was the answer stricken.

Thus, to some extent, counsel was able to pursue the subject.

Second, the inquiry was not shown to be relevant to the entrapment defense. Manning was arrested after Roell committed the illegal act, and, after Roell was arrested. It is obvious that evidence pertaining to entrapment must, in order to be relevant, bear on the defendant's state of mind at the time he committed the illegal act. As Chief Judge Coffin, of the United States Court of Appeals for the First Circuit, has said, in a similar case:

> The remaining contention of the appellant, concerning the district court's exclusion of testimony offered by appellant to prove the defense of entrapment, does not merit full discussion. The conversations sought to be presented occurred after Frost's arrest. The requisite elements of entrapment must necessarily precede the criminal acts. We cannot comprehend what form of alchemy the appellant intended to employ to transmute *post facto* conversations into *pre facto* entrapment. The district court did not err in declining appellant's invitation to view this experiment. United States v. Frost, 431 F.2d 1249, 1251 (1st Cir. 1970), cert. denied, 401 U.S. 916, 91 S.Ct. 896, 27 L.Ed.2d 817 (1971).

Furthermore, counsel contended that *Zylman was responsible* for the entrapment, *not the agents*. Hence, it is difficult to understand what relevancy the agents' subjective reasons for arresting Manning could have had.

█ With regard to Manning, who did not claim entrapment, but rather lack of knowledge with respect to the identity of the substance she transferred, the subjective reasons for her arrest were properly found to be irrelevant. Whether she knew the substance was cocaine on September 22, 1972, could not in any way be proven or disproven by the Government agents' state of mind on November 21, 1972, when they arrested her. Whether the agents

believed that she was guilty was, of course, totally irrelevant and a question for the jury.

> b. Failure to allow examination of Johnson with respect to statements made to him by Agent O'Connor before and after Roell's arrest, and regarding the fact that Johnson refused to sell drugs to O'Connor.

█ First, as we have previously suggested, conversations which occurred after the illegal acts were committed by Roell are not ordinarily relevant to his state of mind at the time he committed the acts. United States v. Frost, *supra*, 431 F.2d at 1251. Defense counsel, through Johnson, was attempting to show that agent " * * * O'Connor was aware that these two buys would not hold water, that he was trying to make deals because of it." It is clear that defense counsel attempted to show that O'Connor had indicated that Roell would not be arrested or not tried, if he acted as an informant. For example:

> Q. After Mr. Roell was arrested did you offer to see to it that he was not prosecuted if he would go out and get people to make drug sales * * *?

In United States v. Higgins, 362 F.2d 462, 465 (7th Cir.), cert. denied, 385 U. S. 945, 87 S.Ct. 316, 17 L.Ed.2d 224 (1966), the Court held irrelevant, evidence of an agent's request that an arrested defendant become an informant because the evidence had no tendency to prove the case against the defendant was fabricated. Furthermore, as previously suggested, the defense was not that the agents entrapped Roell, but that Zylman had. Hence it is difficult to understand how O'Connor's alleged offer to bargain indicated in any way that Zylman entrapped Roell.

Second, Roell claims that Johnson should have been able to testify that O'Connor unsuccessfully sought to buy drugs from Johnson. But as the trial judge succinctly said, "Mr. Johnson is not a defendant * * *." Defense

counsel, through Roell, was allowed to demonstrate that O'Connor unsuccessfully sought to buy drugs from Roell 10 or 15 times after September 25, 1972.

c. Miscellaneous restrictions.

█ First, defense counsel attempted to question Zylman about possession of injection equipment and guns when he was arrested prior to the events in question. This was done in an apparent attempt to demonstrate that Zylman was under pressure to secure convictions in exchange for immunity from prosecution. The court informed the jury of Zylman's arrest, his possession of 450 pounds of marijuana, and the fact that he had not yet been tried. The court did not abuse its discretion in refusing to permit the defendant to make further inquiry. *See United States v. Madden*, 482 F.2d 850 (8th Cir., 1973).

█ Second, counsel tried to cross-examine the agents with respect to notes they had made during their investigation. These notes were not subject to discovery under Fed.R.Crim.P. 16(b), or the Jencks Act, 18 U.S.C. § 3500. *See United States v. Long*, 468 F.2d 755, 756 n. 1 (8th Cir. 1972). *Cf. United States v. Mechanic*, 454 F.2d 849, 857 (8th Cir. 1971), cert. denied, 406 U.S. 929, 92 S. Ct. 1765, 32 L.Ed.2d 131 (1972); *United States v. Turner*, 442 F.2d 1146, 1148–1149 (8th Cir. 1971). Therefore, cross-examination was properly restricted with respect to these memoranda.

█ Third, defense counsel asked Agent O'Connor whether he had "any feeling about hippie-type individuals?" Objection was made and sustained to this question. The question was clearly irrelevant. In any event, counsel was permitted to ask whether O'Connor attributed any significance to the fact that "hippie-type" individuals entered a place of business. O'Connor answered in the negative.

█ Fourth, during the cross-examination of Agent O'Connor, defense counsel asked:

Q. [Y]ou know [Roell's] business [is] completely within the law?

A. That's incorrect.

Q. The business of Stone Bleu, Limited, the sale of magazines, posters, things of that nature, is outside —these are outside the law?

A. One other thing unrelated to drugs that Mr. Roell said to me when I was buying the second ounce, he showed me a pornographic comic book and he said, "If the Minneapolis Police Department knew I was selling this I could be arrested." He implied that it was illegal to sell such a pornographic comic book.

Counsel tried to ask O'Connor whether O'Connor had made a judgment as to the illegality of the comic book, but an objection was made and sustained. O'Connor was asked whether he told any law enforcement agents about the comic book. O'Connor testified that he did not so inform any law enforcement agents about the book. This subject was clearly irrelevant.

█ Fifth, the complaint which formed the basis of Manning's arrest indicated that a "reliable informant" said that Manning entered the building where the drugs were sold, and handed Roell a plastic bag containing about one ounce of a substance represented to be cocaine, and Roell sold such substance in her presence. The informant turned out to be Agent McDowell, and defense counsel was able to learn this by cross-examination of Agent O'Connor. It was only when counsel attempted to inquire about the Government's practice in calling Government agents "reliable informants" that cross-examination was restricted. Such inquiry was clearly irrelevant.

█ Sixth, the district court sustained an objection to a question put by defense counsel to Roell about a conversation he had with Zylman after Roell's arrest. These conversations coming as

**402**

they did after Roell's arrest were very probably irrelevant. United States v. Frost, *supra*, 431 F.2d at 1251: "The requisite elements of entrapment must necessarily precede the criminal acts." Furthermore, no offer of proof was made. It is not apparent from context what testimony counsel was trying to put before the jury, and, in the absence of an offer of proof, it is extremely difficult to evaluate the claimed error. Hunt v. United States, 231 F.2d 784, 788 (8th Cir. 1956); C. McCormick, McCormick on Evidence § 51 at 110 (Cleary Ed. 1972).

[13] Seventh, counsel objects to being restricted during closing argument. Counsel was arguing, "Eric Zylman was a subject of involuntary servitude, something that I think Abe Lincoln stopped. They wanted Steve Roell and Tommy Johnson to be their involuntary servants also." Objection was made, on the basis that there was no evidence which supported the assertion, and the trial judge said, "There is no evidence to that effect, Mr. Bergstein." Mr. Bergstein responded, "I am aware of that, Your Honor. I am asking the jury to draw a reasonable inference from the evidence." In any event, counsel was allowed to argue, in much more restrained and proper language, that:

> [T]here was no doubt in the minds of the agents that Steve Roell and his partner Tom Johnson were engaged in a business which, if they could not recruit them, if they could not get them to work for the Bureau of Narcotics, they could be very helpful. * * *

The Court has studied the transcript and has concluded that the defendants' counsel was not improperly restricted by the trial court. In fact the trial court was more patient with the constant argumentative, repetitive, and irrelevant questions propounded by defendants' counsel than was required under the circumstances of the case.

### III. *Separate Trial—Manning*

Without reference to any authority, case law or otherwise, counsel claims that it was prejudicial error to join the trial of Manning with that of Roell, since Roell was charged in four counts and Manning in only two counts of the indictment. It is clear that Roell and Manning were involved in the same transaction on September 22, 1972, as Manning handed the cocaine to Roell in order to consummate the transaction. This is enough to satisfy Rule 8(b) of the Federal Rules of Criminal Procedure. Moreover, by the express terms of Rule 8(b) "all of the defendants need not be charged in each count." *See* Williams v. United States, 416 F.2d 1064, 1069 (8th Cir. 1969).

Furthermore, Manning has failed to meet "the heavy burden resting upon [her] to show that the trial court abused its discretion in denying a severance" pursuant to Rule 14 of the Federal Rules of Criminal Procedure. *Id.* at 1070.

### IV. *Mistrial.*

During cross-examination of Agent O'Connor, defense counsel asked:

Q. At any time after the 25th did you ever see or become aware of Tommy Johnson committing any criminal offense?

MR. LEE [Government counsel]: Well, I would renew my earlier objection to this question as going outside the scope of his testimony on direction examination.

THE COURT: We are not trying a case involving Tommy Johnson. He is not a defendant here, Mr. Bergstein.

(To the witness) You may answer the question.

A. Yes, on the day I arrested Steven Roell, Steven Roell told me that Tommy Johnson gave him four grams of cocaine. To transfer that cocaine is a criminal offense.

Due to a suppression order, the Government was not allowed to use any statements made by the defendants at the time of their arrest, save for impeachment purposes. Roell and Manning now claim that Agent O'Connor's answer violated the suppression order.

This contention is absolutely frivolous. Counsel invited the answer over Government objection, and the expressed reservation of the trial judge. Furthermore, this incident aptly points out what the trial judge was attempting to safeguard against when he restricted examination about conversations occurring after the illegal acts.

V. *Comments by the Trial Judge.*

 Roell and Manning claim they are entitled to a new trial because of certain comments made by the trial judge. Most of the statements were in response to questions which the trial court had previously ruled improper. Other comments were made when counsel was a bit overzealous in his examination of a witness or the manner in which he phrased his objections. This Court is required to view these comments from the perspective of the proceedings as a whole, which we have done as indicated heretofore in this opinion. *See* United States v. Haley, 452 F.2d 391, 396 & n. 2 (8th Cir. 1971), cert. denied, 405 U.S. 978, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1972). The proceedings as a whole demonstrate that Manning and Roell received a trial in a courtroom where the proper "atmosphere of austerity" was present. Offutt v. United States, 348 U.S. 11, 17, 75 S.Ct. 11, 99 L.Ed. 11 (1954). The defendants' contention that the comments by the trial judge here approached those recounted in United States v. Dellinger, 472 F.2d 340, 387–388 & nn. 83–84 (7th Cir. 1972), cert. denied, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973), is frivolous.

The judgments of conviction are affirmed.