**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Donald J. GARRISON, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Clovis N. OOLEY, Defendant-Appellant.**

**Nos. 13321, 13322.**

United States Court of Appeals
Seventh Circuit.

Oct. 31, 1961.

Rehearing Denied Dec. 18, 1961.

Henry G. Morris, St. Louis, Mo., for appellant.

Matthew M. Corry, Asst. U. S. Atty., James B. Brennan, U. S. Atty., Milwaukee, Wis., for appellee.

Before KNOCH and CASTLE, Circuit Judges, and MERCER, District Judge.

KNOCH, Circuit Judge.

Donald J. Garrison and Clovis N. Ooley, the two defendants-appellants in these cases, were both named in an eleven-count indictment, issued on August 11, 1958, by the Grand Jury for the Eastern District of Wisconsin. The indictment charged Mr. Garrison and Mr. Ooley with conspiracy and mail fraud. They were found guilty. This Court's opinion affirming the judgments of the Trial Court is reported in 280 F.2d 493, where the facts of the case are discussed in detail.[1]

1. Chief Judge Hastings speaking for this Court stated:

"The evidence in the record establishes the following course of events. Defendants had worked as salesmen for several months prior to March, 1956, for Silver King Distributing Corporation in St. Louis, Missouri, where they sold vending machines for the automatic vending of Gillette Blue Blades (safety razor blades). They determined to go into business for themselves.

"About March 26, 1956, at St. Louis, Missouri, defendants obtained from the United States Post Office Department a mailing permit for a corporation to be known as Bell Merchandising Automatically, Inc.

"On April 2, 1956, defendants caused to be formed a Missouri corporation under the name of Bell Merchandising Automatically, Inc., 1183 Hodiamont Avenue, St. Louis, Missouri. Defendants were named as the principal officers of the corporation, Garrison acting as president and Ooley as vice-president. Each owned 49 shares of stock, with the remaining two shares owned by their respective wives. The primary purpose of the corporation was to deal in automatic vending machines and merchandise to be sold therefrom.

"About the first of April, 1956, defendants caused advertisements to be placed in four newspapers published in the Eastern District of Wisconsin, all of which newspapers circulated through the United States mail. These newspapers were the Milwaukee Sentinel, Cudahy Reminder Enterprise, Fond du Lac Commonwealth Reporter and Appleton Post Crescent. Typical of such advertisement was the following:

" 'Increase Your Income
"Part or Full Time
" 'Dispensing World Famous
"Gillette" Blue Blades
" 'Reliable man or woman will be selected for this area to handle the world famous 'Gillette' blue blades through our new modern type merchandising dispensers. An unusual opportunity to secure your future. Will not interfere with your present employ-

ment. To qualify you must have
* * *
* $1,498.50 Cash Available Immediately for Inventory
* 2 References and Serviceable Car
* 5 Spare Hours Weekly
* Must Be Able to Start at Once
This company will supervise your operations and extend financial assistance to full time if desired. This excellent opportunity is offered to a dependable person who is interested in their future. It's an all cash business, depression proof, no credit risk. Do not answer unless fully qualified for the necessary time and investment.
.Income Starts Immediately .No Selling or Soliciting .Business Is Set Up for You .Company Secures All Locations.

" 'For personal interview Write Box M 37'

"Within a few days after the publication of these advertisements, and in answer thereto, the ten persons alleged to have been defrauded responded by letter to the post office box listed. Almost immediately thereafter five of them were personally contacted by defendant Garrison, four by defendant Ooley and one by both of them. (These ten persons all testified for the Government.) Each read the advertisement and responded by mail. Each testified that when visited by one of the defendants, oral representations were made. From the sales talk given by defendants, the following general pattern of representations was made:

"That Bell Merchandising Automatically, Inc., was a well-established firm and had been in business for a long time. That it had been approved by one or more of the following: St. Louis Better Business Bureau, St. Louis Chamber of Commerce, Milwaukee Better Business Bureau, Milwaukee Chamber of Commerce, Cudahy Chamber of Commerce, Fond du Lac Chamber of Commerce and the Appleton Chamber of Commerce. (This was false. The company had just started in business, and it was stipulated that none of these organizations endorsed or approved any business.)

"That the company was listed in Dun and Bradstreet under the name of 'Bell

At the trial in the District Court in Milwaukee, Wisconsin, the government's witness Billie Ann Snelson testified as follows:

"Q. And who was it that you worked for at Silver King? A. Pete Krane.

"Q. Anybody else? A. Yes, I worked under one of [sic] the other —I was working for one of [sic] the other at all times.

"Q. Was it their company, those two that had—A. I don't know Jack DeWees.

"Q. Were they your bosses? A. Yes. * * *

"Q. I see. Now, I am not certain whether this question was asked of you, Mrs. Snelson, but were there other salesmen working for Silver King at the time that you were working there and Mr. Ooley

M.A.' with a B-1 rating, indicating an annual income of $200,000. One person was told that the company had the financial standing of AT&T and another that its rating was as high as General Motors and the Bell Telephone Company. (This, was false. Another business concern, well known in St. Louis as 'Bell M.A. Co.,' was listed in Dun and Bradstreet with a B-1 rating.)

"That the company was controlled or financially backed by the Gillette Company and had the exclusive franchise to manufacture and distribute the dispensing machines or the exclusive right to dispense Gillette blades in vending machines, or that 'you can't go wrong with a company like Gillette behind you.' (This was false.)

"That the prospect would be given a large, exclusive territory such as the entire city of Milwaukee or half the city of Milwaukee or similarly large territory. That the vending machines would be placed for them by a location engineer in hotels, motels, factories, well known chain drug stores and supermarkets and similar establishments. (This was false.)

"That they would earn a substantial amount, ranging from $23.10 per week to $390 per month; that if sales did not exceed a varying minimum amount or earnings did not meet the estimates, the company would relocate the machines in more favorable locations; that the machines were being sold to them at cost; and that any time they wanted to quit business, the company would repurchase the machines at a price of 5 to 10% below cost. (This was false. These promises did not materialize.)

"There were other oral misrepresentations made to the ten victims by defendants during the course of their sales talk following the same general pattern as above set out. We need not further burden this opinion with them.

"Each of the ten persons alleged to have been defrauded testified that based upon these representations made by defendants, he entered into a written contract in which he agreed to purchase thirty vending machines at $49.95 each and 400 packages of Gillette Blue Blades at 34 cents each, making a total contract price of $1,634.50. Each further testified that upon signing the contract and paying at least a part of the contract price, he received a letter sent through the United States mail confirming the contract and acknowledging the payment made. Such letters were signed 'Jack Sullivan, Mgr.' In most instances the balance of the contract price was paid after receipt of this letter.

"It was abundantly shown that the invitation to participate in this enterprise was extended through the newspaper advertisements. The initial response was by letter sent through the mail to the post office box indicated, and the final confirmation was made by defendants by letter duly mailed.

"An office employee of defendants [Billie Ann Snelson] testified that during April, 1956 she wrote the sale confirmation letters in question and was instructed by defendants to sign the fictitious name of 'Jack Sullivan.' She further testified that defendants instructed her to respond to any telephone calls for Jack Sullivan that he was out of the office and could not be reached; that Bell Merchandising Automatically, Inc. did not have a factory (as set forth in the purchase order contract); and that defendants did not manufacture their own vending machines. She further testified that she typed out the sales talk used by defendants; that this was placed on a tape recorder and was discussed by defendants; and that it had to do with the selling of the vending machines and razor blades. She did work in preparation of sales materials."

and Mr. Garrison were working there? A. As far as—at Silver King?

"Q. Yes, ma'am. A. As far as I can remember, it was Mr. Garrison, Mr. Ooley, Pete Krane, and Jack DeWees.

"Q. Now, insofar as the pitch or sales talk, when they were working for Silver King they had a sales pitch or sales talk that was given to them by the owners of Silver King; isn't that right? A. No, sir.

"Q. You say they were not given a sales pitch, or that you don't know about it? A. I have never known a salesman to get a sales pitch from Silver King.

"Q. I see. A. They—I—

"Q. Did the salesmen have a sales pitch there at Silver King? A. I was told they did.

"Q. You were told they did. I see. But you did not prepare it? A. No, I did not.

"Q. They had it, but you did not prepare it? A. No. * * *"

Donald Garrison testified as follows during the trial at Milwaukee, Wisconsin:

"Q. Before that were you working anywhere? A. Yes, for the Silver King Distributing Corporation on Olive Street.

"Q. Is that in St. Louis? A. Yes, sir.

"Q. What is the business of the Silver King Company? A. Sells razor blade machines.

"Q. Are they the same kind of a blade machine you see there, Exhibit 8? A. Yes, sir, they are.

"Q. How long had you worked for them? A. Approximately four to five months.

"Q. What did you do; in other words, tell us this: When you went to work there what were the circumstances under which you did go to work there? A. Well, I knew Mr. DeWees, one of the owners of Silver King Distributing Corporation, and he came over and talked to me and told me—for me to come over and talk to his partner, Mr. Krane. And I went over and talked to Mr. Krane, and they explained it to me and showed me the literature and all the brochures that they had in regards to the business. I told them I would think it over and let them know in a few days. Well, I went home and gave it considerable thought, and became sold on the idea myself, and I went back and Mr. DeWees took me out and explained the whole sales presentation to me. * * *"

Clovis N. Ooley testified as follows during the trial at Milwaukee, Wisconsin:

"Q. Now, did you have a sales pitch? A. Yes, we did have.

"Q. What did that consist of, if you please? A. Well, it was just a sales talk, a presentation that we learned from Mr. DeWees over at the Silver King Distributing Company, and Billie typed it up for us and we read it over and we studied it, but then we presented it in our own words.

"Q. I see. And did you ever have occasion to rehearse it, as they say, in the offices of your company? A. Oh, yes, we did do that.

"Q. Did you do it in the presence of other people? A. Yes, in the presence of whoever might be around, like Mr. Garrison; he and I would rehearse it together. * *

"Q. Now, Mr. Ooley, I believe that you worked for Mr. DeWees? A. Yes, sir.

"Q. And where was that at? A. At the Silver King Distributing Company in St. Louis.

"Q. And after you worked there you started your own corporation; is that right? A. Yes, sir.

"Q. Mr. Ooley, you testified, I believe on direct examination, that Mrs. Snelson typed up the sales pitch? A. Yes, she did. * * *"

Both Mr. Garrison and Mr. Ooley were later tried in the District Court for the Eastern District of Missouri on other charges of devising a similar scheme to defraud and of using the mails in furtherance of that scheme. Mrs. Snelson was again called as a witness for the government in the Missouri case. In the Missouri trial she testified that while employed at Silver King Distributing Company, she had typed several copies of a sales pitch and had given these copies to Silver King salesmen. She also testified that she did know Mr. Jack DeWees. The Trial Judge in the Missouri case declared a mistrial on the ground that Mrs. Snelson had given conflicting evidence with respect to these items, and that her evidence in the Wisconsin trial or the Missouri trial had to be wrong or false. The Trial Judge in Missouri indicated that this apparent discrepancy could perhaps be explained,[2] but that the sales pitch was already in evidence as an exhibit, that he could not see how reception of that exhibit could be cured, and that he had, therefore, sustained the defendants' motion for mistrial.

Mr. Garrison and Mr. Ooley then moved for a new trial on the Wisconsin case on the ground of newly discovered evidence that the testimony of a material witness for the government had been false or perjured. It was their position that Mrs. Snelson's testimony was vital to the government's case to substantiate the charge of use of the mails and the existence of a scheme to defraud. They rely heavily on the fact that in a third trial in Missouri, (after the mistrial) when Mrs. Snelson was not a witness, both of them were acquitted.

At the trial in Wisconsin, defendants sought to prove that their activities in their own company, Bell Merchandising

Automatically, Inc., were in part modeled on the practices they had learned at Silver King, which they had believed to be proper procedures.

The motion for a new trial in the Wisconsin case was denied, and this appeal followed.

■■ The appellants contend that the Trial Judge abused his discretion in overruling their motion for a new trial in the Wisconsin case. A motion of this nature is addressed to the sound discretion of the Trial Court. United States v. On Lee, 2 Cir., 1953, 201 F.2d 722, certiorari denied 345 U.S. 936, 73 S.Ct. 798, 97 L.Ed. 1364. It should be granted with caution. United States v. De Marie, 7 Cir., 1958, 261 F.2d 477, 479. In deciding a motion of this nature, the Trial Judge may take into consideration such knowledge as he gained while presiding over the trial. United States v. On Lee, supra; United States v. Marachowsky, 7 Cir., 1954, 213 F.2d 235, certiorari denied 348 U.S. 826, 75 S.Ct. 43, 99 L.Ed. 651.

The Trial Judge, in ruling on this motion for a new trial in the Wisconsin case, noted (1) that Mrs. Snelson's statement, in the Wisconsin trial, that she did not know Jack DeWees, was given as an unresponsive answer to an incomplete question, and that her later testimony showed that she did know Jack DeWees; and (2) while Mrs. Snelson said she did not prepare a sales pitch at Silver King, and had never known a salesman to get a sales pitch there, she also testified that she was told that the Silver King salesmen did have a sales pitch.

■■ Assuming that Mrs. Snelson's statement in the Wisconsin trial that she did not type a sales pitch at Silver King, was directly contradicted by her testimony in the Missouri trial, and that it was, in fact, a false statement, the Trial Judge found it insufficient to justify granting a new trial. He concluded that the allegedly false testimony concerned

2. Counsel for the government do suggest a plausible explanation, but we do not reach that question because of the basis on which this appeal is decided.

minor details not material to the guilt of the defendants. To justify a new trial, evidence described as newly discovered must also be material to the issues involved. Pitts v. United States, 9 Cir., 1959, 263 F.2d 808, certiorari denied 360 U.S. 919, 79 S.Ct. 1438, 3 L. Ed.2d 1535.

We cannot consider the action of the District Court, in denying this motion for a new trial, as manifesting an abuse of discretion.

We have considered all arguments raised by appellants, but do not deem it necessary to comment on each as they do not alter our opinion that the order of the District Court must be affirmed.