UNITED STATES of America,
Plaintiff-Appellee,

v.

Frank BRIGGS and Daniel Schlacks,
Defendants-Appellants.

Nos. 81–2325, 81–2593.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 29, 1982.

Decided Feb. 25, 1983.

Certiorari Denied May 23, 1983.
See 103 S.Ct. 2129.

Thomas C. Crooks, Chicago, Ill., Sheldon S. Grauer, Broadview, Ill., for defendants-appellants.

John W. Vandreuil, Asst. U.S. Atty., Madison, Wis., Frank M. Tuerkheimer, U.S. Atty., for plaintiff-appellee.

Before ESCHBACH and COFFEY, Circuit Judges, and WISDOM, Senior Circuit Judge.*

COFFEY, Circuit Judge.

The defendants-appellants, Frank Briggs and Daniel Schlacks, appeal from their judgments of conviction of violating the Travel Act and conspiring to violate the Travel Act. The defendants contend that because they intended to commit only one state crime (arson), the indictment charging them with multiple violations of the Travel Act[1] was multiplicious, and also that the district judge erred in sentencing the defendants to consecutive terms of imprisonment. The defendant Briggs contends that the trial court likewise erred when it admitted into evidence the identification testimony of two witnesses that resulted from "unduly suggestive [identification] procedures." Schlacks asserts that the trial judge erred in denying Schlacks' motion for a new trial and/or resentencing based on newly discovered evidence, and both defendants allege that the trial court erred in denying their motions for judgment notwithstanding the verdict. Affirmed.

The defendants-appellants were charged with violating the Travel Act and conspiring to violate the Travel Act for their involvement in a scheme to burn down the Anson & Gilkey Company lumber mill in Merrill, Wisconsin. Specifically, Briggs and Schlacks were charged with conspiring to commit the state crime of arson and with causing other individuals to travel from Chicago, Illinois to Merrill, Wisconsin with the intent to commit the arson. Both defendants were also charged with using an interstate facility (i.e. a telephone) in furtherance of the arson scheme while Briggs was also charged with traveling in interstate commerce with the intent to commit the arson. Prior to trial, two of the defendants' co-conspirators (MacKenzie and Welchman) entered into plea agreements

---

* The Honorable John Minor Wisdom, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

1. The Travel Act, 18 U.S.C. § 1952 provides:
"(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to

    *    *    *    *    *    *

(2) commit any crime of violence to further any unlawful activity;

    *    *    *    *    *    *

and thereafter performs or attempts to perform any of the acts specified ... shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(b) As used in this section 'unlawful activity' means

    *    *    *    *    *    *

(2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States."

with the government, and in exchange for their testimony at trial, the government agreed not to charge them as co-conspirators of the defendants.[2] At the close of a three week trial, the jury found the defendants Briggs and Schlacks guilty on all counts. The trial judge denied both defendants' motions for judgment n.o.v. and sentenced Briggs to three consecutive terms of 18 months imprisonment each on counts I, II and III and Schlacks to three consecutive one-year terms of imprisonment on counts I, III and IV.[3] Briggs was also sentenced to three years probation on count IV to commence upon his release from physical custody. Briggs and Schlacks have appealed from their convictions and sentences. Schlacks has also appealed from the trial court's denial of his motion for a new trial and resentencing based upon newly discovered evidence.

## 1. *Identification Testimony*

The government offered evidence demonstrating that during the course of the conspiracy to burn the Anson & Gilkey plant, the defendant Briggs traveled with Fred Welchman and Roderick MacKenzie from Chicago, Illinois to Merrill, Wisconsin to give them an opportunity to view the physical layout of the lumber mill. During the return trip to Chicago, Welchman was stopped and issued a speeding citation by Illinois State Trooper Leland Files. At trial Officer Files testified that at the time he issued Welchman the citation, the defendant Briggs and one other male were in the vehicle with Welchman. Defense counsel objected to this identification on the grounds that Files' in-court identification was "tainted," and the trial court granted counsel's request to conduct a *voir dire* examination of Officer Files.[4] At the *voir dire* examination, Officer Files testified

that approximately two weeks after stopping Welchman for speeding an FBI agent visited his house and showed him two photographs and a candid snapshot and asked him to identify the men depicted therein. Files was able to identify the mug shots of Welchman and MacKenzie as being two of the three individuals in the car he had stopped for speeding, but was unable to identify Briggs from the family-type snapshot of Briggs and another person on the same picture. Files stated to the FBI agent that the third individual was "a heavy set man but I could not make out the description of the man because he was in the back seat." During *voir dire* Officer Files further testified that while he was waiting outside of the courtroom to be called as a witness he observed Briggs conversing with another individual and at this time without any prompting or suggestion from anyone, he realized that Briggs was the "heavy set man" he had seen seated in the back seat of the car at the time he (Files) stopped Welchman for speeding. Defense counsel moved for a mistrial arguing that Officer Files' in-court identification of the defendant Briggs was "impermissibly suggestive." The trial court denied the motion ruling that Officer Files' identification of Briggs was not impermissibly suggestive and that Files' previous inability to identify Briggs from the small family-type snapshot went to the trustworthiness of the witness's identification of Briggs and not to its admissibility and thus raised a question for the trier of fact, the jury.

Prior to this incident but during the same return trip to Chicago, Welchman, MacKenzie and Briggs stopped at a pizza restaurant in Wausau, Wisconsin and asked for directions to an automobile junkyard or body-shop in the area, as they were looking for an old car to steal a set of Wisconsin motor

---

**2.** Charles Conant, the owner of the Anson & Gilkey Company, was tried and found not guilty of being a co-conspirator with the defendants.

**3.** Count I of the indictment charged the defendants with conspiring to violate the Travel Act, count II charged them with traveling interstate with the intent to commit arson, count III

charged them with causing others to travel interstate to commit arson and count IV charged them with using the telephone to further the arson scheme.

**4.** The *voir dire* examinations discussed herein were conducted outside of the presence of the jury.

vehicle license plates therefrom in order to conceal the ownership of the automobile they intended to use on the contemplated arson trip. At trial, the government offered the testimony of Lance Longo, a waiter in the Wausau pizza restaurant, who stated that on the night in question he had waited on three men, two of whom he identified as Welchman and Briggs. During the *voir dire* examination Longo explained that when he was shown the home-type candid snapshot of Briggs and another person on one picture, he was unable to identify Briggs as one of the men. However, he related that while waiting to testify at trial he saw Briggs in the courtroom and later in the hallway and, without any prompting or suggestion, he alerted federal agents that he recognized Briggs as one of the three men he had spoken with in the restaurant. Defense counsel again objected to this type of in-court identification of Briggs on the grounds that the identification was "impermissibly suggestive." After an exhaustive *voir dire* examination of the witness during trial but in the absence of the jury, the district judge denied counsel's motion, ruling that Longo's inadvertent presence in the courtroom while others were testifying did not taint his identification of Briggs and was not "impermissibly suggestive." In fact no proof was offered at trial that anyone had suggested to Longo that he identify Briggs as one of the men in the restaurant on the night in question. The court stated:

"However, I'm not persuaded that the testimony that Mr. Longo heard was influential or would have impaired his ability to be a fair witness; and I am not persuaded in view of the number of people at counsel table, that Mr. Longo's being in the courtroom and seeing all those people lined up would have made his identification of Mr. Briggs so impermissibly suggestive as to be disallowed in this proceeding."

■ Relying upon *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the defendant Briggs asserts that the district court erred in refusing to apply the "totality of the circumstances" test to determine the reliability of the witnesses' in-court identification of Briggs. Briggs argues that *Neil v. Biggers* requires an examination of a number of factors (such as the witness's degree of attention at the initial confrontation between the defendant and the witness, the accuracy of the prior description of the defendant, etc.) in order to determine whether the witnesses' identification of the defendant should be admitted at trial. 409 U.S. at 199, 93 S.Ct. at 382. However, in this fact situation we disagree with the defendant's interpretation of *Neil v. Biggers* as requiring an examination of the "totality of the circumstances" surrounding Files' and Longo's ability to identify Briggs. The *Biggers* Court stated that the central question was "whether under the 'totality of the circumstances' [test] the identification was reliable *even though the confrontation procedure was suggestive.*" *Id.* (Emphasis supplied). Thus, it is incumbent upon a defendant to establish that the confrontation procedure in fact was suggestive prior to reaching the threshold "totality of the circumstances" test of reliability.

■ Before a court excludes an in-court identification of a defendant by a witness on the grounds that the identification procedure was suggestive, the defendant must establish that there has been "a very substantial likelihood of irreparable misidentification." *Neil v. Biggers,* 409 U.S. at 198, 93 S.Ct. at 381. *See also Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Briggs contends that "intervening circumstances [exist] which cast doubt on the accuracy of [Files' and Longo's] identifications" of Briggs. The defendant asserts that Files' identification is not reliable because Files initially observed Briggs during an "unremarkable" traffic stop on an unlighted highway in the middle of the night. The defendant ignores the fact that the traffic stop was not "unremarkable" since Officer Files testified that he was wary of stopping the individuals in Welchman's car as officers in the 1970s have been trained to guard against the possibility that the occupants of the car may often be armed and dangerous

and/or fleeing a crime. Files further revealed that he illuminated the interior of the car with his spotlight and also shined his flashlight on the occupants' hands and faces, thus providing him with the opportunity to make a clear observation of the identity of the occupants of the car. Briggs challenges Longo's identification on the grounds that Longo was directed by a secretary to sit in the courtroom during another witness's testimony in violation of the sequestration order and further that Longo's initial contact with Briggs was also "unremarkable" and therefore Longo's testimony was likewise suspect. However, it is not unusual for witnesses to sit in the courtroom during trial, and there is no proof in the record that the secretary who so directed Longo was aware of any sequestration order. Furthermore, the record fails to reveal that there was anything in the courtroom setting that would "impermissibly suggest" to Longo that he identify Briggs, as Briggs was seated at a table with five other individuals, all of whom conceivably could have been defendants in this case. Longo also testified that he remembered his contact with the defendant because on the night the men visited the restaurant premises, the restaurant was empty and the weather was especially bad. Finally, Files and Longo each testified that no government agent made any suggestion to them whatsoever that they specifically identify Briggs as the man they saw on the night in question. Officer Files testified that when he recognized Briggs in the hallway adjacent to the courtroom, he did so without any prompting or suggestion and the defendant has failed to cite any evidence in the record that Files' confrontation in the hallway with Briggs was impermissibly suggestive. Furthermore, as noted above, when Briggs was identified in court by both Longo and Files, he was seated with his counsel at the defense table along with the other two defendants and their respective counsel. The witnesses (Files and Longo) could have identified any of these six individuals (i.e., three defendants and three attorneys) as being Briggs, but because of their prior contact with Briggs, the witnesses identified him as being the one in the company of MacKenzie and Welchman. Therefore, since the record reveals that the defendant has failed to meet the threshold test of establishing that there was a "substantial likelihood of irreparable misidentification" of Briggs, we hold that a suggestive confrontation procedure was not employed in this case and the spontaneous identifications of Briggs were properly admitted.

■ We also disagree with the defendant's argument that the trial court should have excluded the identifications solely because of the witnesses' previous inability to identify Briggs from the home-type snapshot. The defendant has failed to support this novel theory with any controlling case law and our review of relevant case law suggests that a witness's prior inability to identify a defendant goes to the credibility of the in-court identification and not to its admissibility, and thus raises a proper question of fact for the jury to determine. For example, in *United States v. Black,* 412 F.2d 687 (6th Cir.1969), *cert. denied,* 396 U.S. 1018, 90 S.Ct. 583, 24 L.Ed.2d 509 (1970), an eyewitness was unable to pick out the defendant's picture from a pretrial photo spread but nonetheless was able to correctly identify the defendant at trial. The court held this identification was admissible, stating:

> "The fact that eye witnesses to an occurrence cannot make a positive identification of an individual from an examination of photographs of a number of persons, does not necessarily detract from the validity of their in-court identification where they see the individual in person. The weight to be given to their in-court identification is for the jury to determine."

*Id.* at 689.

■ Briggs' defense counsel during *voir dire* and in the presence of the jury exhaustively examined and cross-examined Files and Longo concerning their initial contacts with the defendant and their inability to identify Briggs from the snapshot, but the

jury apparently chose to believe the witnesses. Furthermore, there is no proof that the snapshot of Briggs which was shown to these witnesses was of good quality; testimony at trial revealed that it was a candid photo of the defendant and an unidentified woman, taken in a home while the defendant was talking on the telephone. Therefore, since the defendant has failed to establish that there was a "very substantial likelihood of misidentification," and because Files' and Longo's prior inability to identify Briggs went only to the reliability of their testimony, the weight to be given to Files' and Longo's in-court identifications of Briggs was a question properly for the jury's consideration and we hold the district court did not err in allowing the testimony of these witnesses identifying Briggs to be received in evidence.

## 2. Closing Argument

During the closing argument of defendant Schlacks' attorney, the trial judge on two occasions interrupted the defense attorney. The defendant Schlacks contends that the district court's interruption of his counsel's closing argument was unduly critical of his trial counsel and was prejudicial to him (Schlacks). The first interruption took place as follows:

"DEFENSE COUNSEL: Now let's take an example. Rod MacKenzie. You saw him on the stand. The mental illness of the man is just unbelievable. I mean, you saw his paranoia; you saw the way he looked, you saw his answers to questions presented to him. There is a man who went to jail and tried to commit suicide. I mean, a perfect example of somebody who isn't well in the head. He tried to commit suicide.

And then he talks about his lying. I know the man is a pathological liar. He comes up to us and he brings us—

THE COURT: Mr. Grauer, I'm going to break in and suggest that you're not in a position to give a psychiatric evaluation of the witness. You can suggest attributes or traits that you observed, but you're not in a position to characterize

those as having some recognized psychiatric medical definition.

DEFENSE COUNSEL: All right, Your Honor, I apologize."

Later during the same closing argument, the following exchange occurred:

"DEFENSE COUNSEL: And, Ladies and Gentlemen, [Schlacks] has been charged with a crime. But I'll tell you what the real crime is here, Ladies and Gentlemen. It's a crime that Dan Schlacks has had to come to this Court and defend himself—

PROSECUTOR: Your Honor—

THE COURT: Mr. Grauer, that goes beyond the bounds of good argument.

DEFENSE COUNSEL: I apologize.—"

■ It is well settled that to warrant reversal because of a trial judge's comments during a defense counsel's closing argument, "it must appear that the conduct [of the trial judge] measured by the facts of the case presented together with the result of the trial, was clearly prejudicial to the rights of the party." *United States v. Eldred*, 588 F.2d 746, 750 (9th Cir.1978). Indeed, "[a] federal judge has the right, and often the obligation, to interrupt the presentations of counsel in order to clarify misunderstandings or otherwise insure that the trial proceeds efficiently and fairly." *United States v. McGovern*, 499 F.2d 1140, 1144 (1st Cir.1974). Moreover, as the reviewing court, we are "required to view these comments from the perspective of the proceedings as a whole" to determine whether under the totality of the circumstances Schlacks was denied a fair trial. *United States v. Roell*, 487 F.2d 395, 403 (8th Cir.1973). Our examination of the transcript leads us to the conclusion that the court did not abuse its discretion in commenting on counsel's statements, and the defendant was not "clearly prejudiced" by the trial judge's remarks. It is apparent from the record that in referring to MacKenzie as a "pathological liar" who exhibited "paranoia" and who "isn't well in the head," defense counsel was referring to MacKenzie in medical psychiatric terms in a possible effort to set forth a psychiatric evaluation of MacKenzie, regardless of the fact that

there was no medical testimony from a qualified medical expert in the record to support the defense counsel's attempted "diagnosis." Moreover, defense counsel's statement that it was a "crime" that Schlacks should be charged with the offenses in the indictment, if not actually going beyond the range of proper argument, it certainly borders on the same. In the trial of a lawsuit where defense counsel makes improper suggestions to the jury and his statements go beyond the range of what a judge determines is proper argument, we hold that it is well within the discretion of the trial judge to advise and caution defense counsel during the argument, as to the appropriateness of counsel's remarks. In so holding, we reaffirm that it is a trial judge's responsibility to protect both the defendant's and the prosecution's rights to a fair and speedy trial while insuring efficiency in the administration of the justice system and guarding against the added expense and delay necessitated when and if a mistrial were to be declared.

Furthermore, even if it had been error for the trial judge to interrupt Schlacks' counsel during closing argument, which we hold it was not, before the conduct of the trial judge rises to the level of reversible error, the defendant must demonstrate that the judge's conduct was prejudicial and substantially interfered with the defendant's rights. *United States v. McPartlin,* 595 F.2d 1321, 1356 (7th Cir.1979) (Pell, J., concurring). In establishing the standard against which reviewing courts must measure a judge's statements during trial, the Supreme Court stated:

> "[O]ur examination of the record as a whole leads us to the conclusion that the substantial rights of the petitioners were not affected. The trial was long and the incidents relied on by petitioners few. We must guard against the magnification on appeal of instances which were of little importance in their setting."

*Glasser v. United States,* 315 U.S. 60, 83, 62 S.Ct. 457, 471, 86 L.Ed. 680 (1942).

As we have reviewed the record in its entirety, the two comments by the trial judge, made near the close of the three week trial, were neither inflammatory nor prejudicial and, when viewed in their context, did not rise to the level of reversible error. In a case such as this, "weighing the overall effect of this [alleged] error balanced against the testimony relating to the defendants' guilt as a whole, we conclude that at its worst, the error was harmless." *United States v. Haley,* 452 F.2d 391, 396 (8th Cir.1971), *cert. denied,* 405 U.S. 977, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1972). The function of a federal judge "is not that of an umpire or of a moderator at a town meeting. He sits to see that justice is done in the cases heard before him; and it is his duty to see that a case on trial is presented in such a way as to be understood by the jury, as well as by himself." *United States v. Cole,* 491 F.2d 1276, 1278 (4th Cir.1974). As the Supreme Court stated "[w]e must guard against the magnification on appeal of instances which were of little importance in their setting." *Glasser,* 315 U.S. at 83, 62 S.Ct. at 471. We refuse to allow Schlacks to "magnify" the trial court's remarks in his appeal to this court because, when viewed in the context within which they were made in light of the record as a whole, the judge's remarks were of an inconsequential nature, totally irrelevant to the eventual outcome of the case against Schlacks.

### 3. *Sufficiency of the Evidence*

Both Briggs and Schlacks assert that the government presented insufficient evidence at trial to prove beyond a reasonable doubt that they participated in the conspiracy to commit arson and that they used interstate facilities in furtherance of the attempted arson. The law is clearly established that if a defendant attacks the sufficiency of the evidence supporting a jury verdict, "[o]nly when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict." *Brandom v. United States,* 431 F.2d 1391, 1400 (7th Cir.1970), *cert. denied,* 400 U.S. 1022, 91 S.Ct. 586, 27 L.Ed.2d 2634 (1971). ("When an attack is

made on the sufficiency of the evidence, the evidence must be viewed in the light most favorable to the government [and] the jury's verdict must be sustained if there is substantial evidence to support it." *United States v. Zarattini,* 552 F.2d 753, 761 (7th Cir.), *cert. denied,* 431 U.S. 942, 97 S.Ct. 2661, 53 L.Ed.2d 262 (1977)). Furthermore, it is not the function of this court to substitute its judgment for that of the jury. *See generally United States v. Cavale,* 688 F.2d 1098 (7th Cir.1982). A substantial amount of the prosecution's evidence implicating the defendants was revealed in the testimony of their co-conspirators, Welchman and MacKenzie. Initially, it should be noted that the defendants exhaustively examined both witnesses during cross-examination concerning the plea bargain arrangements between the witnesses and the government. Welchman testified that Schlacks agreed to participate in the arson scheme and offered to provide a "team of arsonists" who were "tailor made" for the job. Welchman further related, and MacKenzie confirmed that Welchman traveled with Briggs and MacKenzie from Chicago, Illinois to Merrill, Wisconsin to plan the arson and inspect the physical layout prior to the contemplated "torching" of the Anson & Gilkey plant. MacKenzie also stated that he assisted Schlacks with the purchase of the flammable liquids for the arson and that Schlacks transported these liquids in the trunk of his car. MacKenzie further testified that at the direction of Briggs and Schlacks he again traveled from Chicago to Merrill, this time with two other men, to commit the arson. The government bolstered the identification evidence at trial with the testimony of Officer Files and Lance Longo and established that Briggs had in fact traveled between Merrill, Wisconsin and Chicago, Illinois with MacKenzie and Welchman a short time prior to the attempted arson. Finally, the government introduced telephone company records and the testimony of MacKenzie and Welchman showing that Briggs and Schlacks used the telephone both prior to and on the night of the attempted arson to further the arson scheme.

Essentially, both defendants disputed their involvement in the attempted arson by attacking the credibility of Welchman and MacKenzie. It is the function of the jury to assess the trustworthiness of witnesses and weigh the evidence, *United States v. Garcia,* 562 F.2d 411, 414 (7th Cir.1977), and the jury saw fit to believe the testimony of Welchman and MacKenzie and an appellate court "should not attempt to usurp the function of the jury." *United States v. Baren,* 305 F.2d 527, 532 (2d Cir. 1962). Our examination of the record reveals that there is more than sufficient credible evidence in the record for the jury to find beyond a reasonable doubt that Briggs and Schlacks (1) conspired with each other and with Welchman and MacKenzie to commit arson; (2) used an interstate facility (the telephone) to promote and further the conspiracy to commit the state crime of arson; and (3) caused others to travel interstate for the purpose of committing the arson itself. Furthermore, the testimony of Welchman and MacKenzie along with the corroborating testimony of Officer Files and Lance Longo clearly demonstrates that Briggs did in fact travel between Illinois and Wisconsin with the intent to violate state law. We refuse to disturb the jury's findings as there is more than sufficient evidence to support the jury's verdict of guilt as to the respective defendants beyond a reasonable doubt.

### 4. *Multiple Charges and Consecutive Sentences*

As noted at the outset, the defendant Briggs was convicted of three violations of the Travel Act and of conspiracy to violate the Travel Act while the defendant Schlacks was convicted of two violations of the Travel Act and also of one count of conspiracy to violate the Travel Act. Both Briggs and Schlacks were sentenced to serve consecutive prison terms for their convictions on the substantive counts of violating the Travel Act. The defendants assert that their actions in violating the Travel Act were for the purpose of committing one single, noncontinuing state crime (arson), and therefore it was improper for the

government to charge them with multiple violations of the Travel Act and furthermore that the trial court also erred when it imposed consecutive sentences. The defendants assert that Congress did not intend for individuals to be charged with multiple violations of the Travel Act where those violations occurred in the promotion of one single criminal act (arson).

The Travel Act, 18 U.S.C. § 1952, provides:

> "(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to
>
> \*   \*   \*   \*   \*   \*
>
> (2) commit any crime of violence to further any unlawful activity;
>
> \*   \*   \*   \*   \*   \*
>
> and thereafter performs or attempts to perform any of the acts specified . . . shall be fined not more than $10,000 or imprisoned for not more than five years, or both.
>
> (b) As used in this section 'unlawful activity' means
>
> \*   \*   \*   \*   \*   \*
>
> (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States."

The gravamen of a charge under section 1952 "is the use of an interstate facility [telephone], with the intent to promote or further an unlawful activity in violation of state law, and the performance of some act designed to promote or further that illegal purpose." *United States v. Rizzo,* 418 F.2d 71, 74 (7th Cir.1969), *cert. denied,* 397 U.S. 967, 90 S.Ct. 1006, 25 L.Ed.2d 260 (1970). Moreover, case law is clear that a defendant violates the Travel Act if he either causes another to travel in interstate commerce or to use an interstate facility with the intent to commit a violation of state law. *See generally United States v. Zizzo,* 338 F.2d 577 (7th Cir.1964), *cert. denied,* 381 U.S. 915, 85 S.Ct. 1530, 14 L.Ed.2d 435 (1965). Indeed, in the federal prosecution for the violation of the Travel Act, the defendants were not charged with committing the state crime of arson but rather were charged with traveling interstate with the intent to commit the state crime of arson. Therefore the defendants violated the Travel Act by traveling in interstate commerce with the intent to commit arson regardless of whether or not they succeeded in actually committing the arson crime. *Rizzo,* 418 F.2d at 74. *See also United States v. Karigiannis,* 430 F.2d 148, 150 (7th Cir.), *cert. denied,* 400 U.S. 904, 91 S.Ct. 143, 27 L.Ed.2d 141 (1970). Thus, our reading of the statute and case law construing it reveals that a defendant may properly be charged and convicted of committing a substantive violation of the Travel Act in three separate and distinct ways: (1) by traveling interstate with the intent to violate state law; or (2) by using an interstate facility (i.e. telephone, mail) with the intent to violate state law, or (3) by causing another to use an interstate facility or travel interstate with an intent to violate state law, and a criminal defendant violates federal law when he performs any of the above with the intent to violate state law. The record demonstrates that both Briggs and Schlacks used an interstate facility (i.e. a telephone) to further the crime of arson and caused others to travel interstate with the intent to commit the arson. The record is replete with evidence that Briggs traveled interstate with the intent to further the plan to "torch" the Anson and Gilkey plant, in violation of state law. Because the statute encompasses three separate and distinct types of criminal activity (traveling interstate, using an interstate facility and causing others to travel interstate with the intent to commit a crime), we hold it was proper to charge the defendants with all three Travel Act violations. As we have ruled it was proper to charge the defendants with multiple counts of violating the Travel Act and the testimony was more than sufficient for the jury to convict them of the same, likewise we hold it was also well within the discretion of the trial judge to sentence the defendants to consecutive terms of imprisonment for these separate crimes.

In spite of the fact that the Travel Act expressly provides for a maximum sentence of five years imprisonment or $10,000 fine or both for each violation of the Travel Act the defendant Schlacks asserts that the district court abused its discretion in sentencing him to a term of imprisonment rather than granting him probation. The district judge imposed consecutive one year sentences for each violation of the Travel Act, resulting in a total sentence of three years imprisonment, within the five year maximum as defined by the statute. It is settled that:

> "The general rule on review of sentences in the federal courts is: 'once it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end,' unless the sentencing judge relied on improper or unreliable information in exercising his or her discretion, or failed to exercise any discretion at all, in imposing sentence."

*United States v. Main,* 598 F.2d 1086, 1094 (7th Cir.), *cert. denied,* 444 U.S. 943, 100 S.Ct. 301, 62 L.Ed.2d 311 (1979); *see also United States v. Madison,* 689 F.2d 1300 (7th Cir.1982) and *United States v. Brubaker,* 663 F.2d 764 (7th Cir.1981). Our review of the presentence hearing reveals that the district judge specifically considered the fact that Schlacks' "involvement was the most minimal of any of the persons who have been convicted" and further that the contemplated arson "was certainly a serious crime of great magnitude." Because the sentences imposed on Schlacks were within the five year statutory maximum, we hold there was no abuse of discretion on the part of the trial judge in sentencing Schlacks to a term of imprisonment rather than placing him on probation.

## 5. Newly Discovered Evidence

Subsequent to the verdict and sentencing, Schlacks filed a motion for a new trial and/or a reduction of sentence based upon "newly discovered evidence." The "newly discovered evidence" consisted of the transcript of a tape recording of a conversation between the defendant Schlacks and one of the government's witnesses, Fred Welchman. The defendant Schlacks asserts the transcript of this tape recording reveals that Welchman committed perjury during the trial of the defendant and therefore the defendant should be granted a new trial. He contends that during this conversation Welchman recanted the testimony he had given at trial and stated that he had given false testimony against him (Schlacks) in order to enhance his (Welchman's) position with the government.

The district judge denied the defendant's motion for a new trial and/or resentencing in the following written order which reads in pertinent part:

> "The transcript [of the tape recording] is incomplete, and larded with apparent omissions, labeled '(inaudible)' and misspellings. It does not conform in tenor to my own memory of the same tape which I listened to in connection with the sentencing of this defendant. Even read as is, the transcript does not support defendant's contention that it is an admission of perjury of Welchman's part.

> I am not persuaded that the transcript of the tape recording requires a new trial or even an evidentiary hearing on the question of a new trial. Far stronger evidence of perjury than this transcript would be necessary to support such a ruling.

> \* \* \* \* \* \*

> Defendant moves in the alternative for a reduction of sentence. Because I listened to the tape recording prior to sentence I knew of Welchman's statements to Schlacks and of Welchman's attempt to apologize for testifying against defendant and helping to convict him of participation in the arson conspiracy. I took into consideration the implication of that recorded conversation that defendant has a lesser amount of criminal involvement in the scheme than did some of the other conspirators. I took into consideration also defendant's relatively crime-free background and his close family ties. I believed then and I continue to believe that the sentence imposed was a

moderate response to the defendant's conviction."

 It is well settled that a motion for a new trial and/or reduction of sentence is addressed to the sound discretion of the trial court and should be granted only with great caution. *United States v. Garrison,* 296 F.2d 461, 465 (7th Cir.1961). The trial court's denial of motions for a new trial or resentencing will be overturned only upon a clear showing that the trial court abused its discretion. *United States v. Reese,* 561 F.2d 894 (D.C.Cir.1977). In determining whether the trial court abused its discretion in deciding that this "newly discovered evidence" did not warrant a new trial, we reviewed the transcript of this conversation and the transcript reveals that the thrust of the conversation involved Schlacks requesting Welchman to convince a third party identified as "Judy" to write a letter to the trial judge seeking leniency for Schlacks. The transcript reveals that Welchman made the following statement:

"Anyway, I'm gonna say, you gotta look deeper Judy, this guy he ain't as bad as McKenzie [sic] made him out to be or I made him out to be and I had to use that in my testimony and I did it but I didn't to [sic] it belligerently to hurt him that bad, believe me he ain't that bad of a guy, look in his record, he's not capable of putting all these big crimes together, he's not that kind of a man to do it, he's a religious man, he's a devoted homemaker,. [sic] Take a good strong look at him, please, for my benefit I have nothing to win and nothing to lose, I don't want something to be done to somebody that don't deserve it."

These remarks in no way suggest that Welchman was admitting that he perjured himself at trial. Indeed, his comments do not conflict with his testimony at trial and merely reflect his attempt to show concern and compassion and his effort to assist Schlacks in enlisting the aid of another to petition the court for leniency on his (Schlacks) behalf. Our reading of the transcript of this conversation and the record fails to establish that Welchman perjured himself at trial and the transcript falls far short of conflicting with his previous testimony, and thus we hold that the trial court did not abuse its discretion in denying the defendant Schlacks' motion for a new trial and/or resentencing. We AFFIRM.