Frank M. BRIGGS, Petitioner,

v.

UNITED STATES PAROLE COMMISSION and Dennis Luther, Warden, MCC, Respondents.

No. 84 C 1155.

United States District Court, N.D. Illinois, E.D.

May 18, 1984.

that the United States Parole Commission impermissibly refused to advance his date of release from incarceration. Respondents have moved to dismiss; in part, the motion is essentially one for summary judgment, as both parties have submitted materials outside the pleadings.[1]

Petitioner was convicted of conspiracy to commit arson, interstate transportation in aid of racketeering, and use of an instrumentality of interstate commerce to facilitate commission of arson in the Western District of Wisconsin on May 29, 1981. On July 30, 1981, he was sentenced to three consecutive terms of 18 months in the custody of the Attorney General, to be followed by three years probation. His conviction was affirmed on appeal. *United States v. Briggs*, 700 F.2d 408 (7th Cir.), *cert. denied*, 461 U.S. 947, 103 S.Ct. 2129, 77 L.Ed.2d 1307 (1983).

Petitioner's first hearing before the Parole Commission took place on June 16, 1982. The Parole Commission decided that petitioner should serve his full sentence, minus good time reduction. Affidavit of James C. Rogers, Exs. A, B. Petitioner appealed this decision. *Id.*, Ex. C. The decision was affirmed on August 31, 1982. *Id.*, Ex. D. On September 20, 1982, petitioner further appealed the decision to the National Appeals Board of the Parole Commission. *Id.*, Ex. E. The appeal was denied on December 7, 1982, though the reasons for the previous decision were modified. *Id.*, Ex. F.

On December 6, 1983, petitioner had an interim parole hearing pursuant to 18 U.S.C. § 4208(h)(1) (1982) and 28 C.F.R. § 2.14 (1983). Petitioner has provided us with a tape recording of the hearing. The purpose of the hearing, as stated by one of the members of the hearing panel, was to consider whether there were any developments or changes that warranted reconsideration of the Commission's earlier deci-

Thomas Crooks, Chicago, Ill., for petitioner.

James J. Kubik, Asst. U.S. Atty., Chicago, Ill., for respondents.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

Petitioner Frank M. Briggs has filed a petition for writ of habeas corpus alleging

---

1. This habeas petition is pursuant to 28 U.S.C. § 2241 (1982). Rule 1(b) of the rules governing § 2254 cases, *id.* § 2254 rule 1(b), states that the § 2254 rules may be applied at the court's discretion to habeas cases not within § 2254. Rule 11 states that the Federal Rules of Civil Procedure may be applied in habeas cases where not inconsistent with the rules. We hold that Fed. R.Civ.P. 12 and 56 are applicable here.

sion. Petitioner submitted numerous documentary exhibits and made an oral statement in support of his request that he be considered for "Superior Program Achievement," *see* 28 C.F.R. § 2.60 (1983), a program which permitted the Commission to advance his release date. The panel agreed to take this into account, and retired to deliberate. In rendering the panel's oral decision, the chairperson of the panel stated that

> [a]lthough you do have the [sic] good institutional record, we are of the opinion that based on the severity of the offense plus the fact that your ... time served are [sic] well below the guidelines, we are not going to recommend Superior Program Achievement or advancing your date....

Memorandum in Opposition to Respondent's Motion to Dismiss, Ex. B (tape recording; the above is transcribed from the recording).

Petitioner was notified at the hearing and in the hearing panel's written decision of his right to appeal the decision. *See* Rogers Affidavit, Ex. H. However, petitioner did not appeal. Rather, he filed this lawsuit. Petitioner asserts that the Parole Commission violated its own regulations, acted arbitrarily and capriciously, and denied him equal protection of law, in refusing to recommend Superior Program Achievement because of the seriousness of his offense.

█ Respondents first argue that petitioner has failed to exhaust his administrative remedies by failing to appeal the December 1983 decision, or alternatively that petitioner's deliberate bypass of the appeal process should bar him from relief here. Respondents agree that these requirements are not jurisdictional in nature. *See* Memorandum in Support of Respondents' Motion to Dismiss at 5 (citing *Jackson v. Carlson,* 707 F.2d 943 (7th Cir.1983)). As the court noted in *United States ex rel. Marrero v. Warden,* 483 F.2d 656, 659 (3d Cir.1973),

*rev'd on other grounds,* 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974), delays may make an administrative remedy inadequate. In his petition, which was filed *pro se,* petitioner stated that he was not pursuing further Parole Commission remedies "due to the time factor involved." Petition for Writ of Habeas Corpus ¶ 3. Petitioner is due to be released in August of this year; it is possible that his request for early release would not be able to run the gamut of administrative appeals within that time. Respondents have not controverted petitioner's suggestion that the Parole Commission's in-house remedies may be inadequate, so for purposes of the present motion we cannot rule in their favor on the exhaustion or waiver defenses. We therefore turn to the merits.[2]

The Superior Program Achievement regulations are found at 28 C.F.R. § 2.60 (1983). Section 2.60(a) states that prisoners who demonstrate superior program achievement may be considered for a limited advancement of their release date. In § 2.60(b), superior program achievement is defined as achievement in areas such as educational, vocational, industry, or counseling programs. Section 2.60(c) states that "[u]pon a finding of superior program achievement, a previously set presumptive date may be advanced" up to a maximum established in the regulation. In petitioner's case, he would be eligible for an advancement of up to six months. *See id.* § 2.60(e).

It is plain from the face of the regulations that advancement of a prisoner's release date is not mandatory even if the prisoner has shown superior program achievement. This is supported by the history of the regulation. The Parole Commission proposed to adopt the Superior Program Achievement regulations on May 30, 1979. *See* 44 Fed.Reg. 31026 (May 30, 1979). The statement of purpose accompanying the proposed regulation stated that the regulation "strikes a middle ground

---

**2.** Respondents' counsel orally waived the filing of a reply brief in a telephone call with our staff.

between the position that institutional performance should be the primary factor in deciding parole, and the position that it should play no role at all." *Id.* at 31027. The Commission stated that it did not feel "that institutional factors can or should play the major role in the release decision. Statutorily, the Commission is required to give major consideration to the seriousness of the offense committed and to the risk the offender presents to society." *Id.* It noted that studies had failed to show a consistent link between good behavior inside prison and good behavior after release. *Id.* The Commission concluded that "[c]onsequently, the traditional factors of severity of the crime and the inmate's prior record remain paramount in the deliberations of the Commission." *Id.*[3]

■ The parties have cited no case law interpreting the Superior Program Achievement regulations, nor have we found any. It appears clear to us from the wording of § 2.60(a) & (c) that advancement of a prisoner's release date even after a finding of superior program achievement was intended to be left to the Parole Commission's discretion: this is shown by the use of the word "may" in both subparagraphs. Further, we see nothing in the regulations themselves or in their history to indicate that the seriousness of a particular prisoner's offense was intended to be left out of the decision whether to advance the prisoner's release date. The most reasonable reading of the regulations, in light of their history, is that the Parole Commission is to balance the prisoner's achievement against the other factors that enter into the decision whether to release on parole. And it is clear from the history of the regulations that the major factor in deciding whether to release an inmate before the expiration of his sentence is to remain the seriousness of his offense. We think that the regulation permits the Parole Commission to balance the inmate's achievement against the seriousness of his offense and thus to deny

advancement of the inmate's release date due to the seriousness of his offense.

It is possible to read the Commission's decision here as finding that petitioner's achievement was not "superior" as defined in § 2.60(b) because of the seriousness of his offense. Such a finding might be questionable, particularly in light of petitioner's excellent record while incarcerated, as the regulation appears to make the finding of achievement or non-achievement turn completely on factors relating to the inmate's participation in programs. However, we think that a more reasonable reading is that the Commission decided that the seriousness of petitioner's offense outweighed the considerations favoring early release. Though the oral decision is not entirely clear on this point, one must remember that it was made, for all practical purposes, off the top of the panel member's head, and thus a lack of syntactical clarity is excusable. The panel's written finding makes the basis for the decision quite clear: "[b]ased on the seriousness of the offense, the panel does not see a reason for a recommendation for earlier release." Rogers Aff., Ex. G at 1–2. It is sufficient for present purposes that the oral decision reasonably may be construed as employing a similar balance. In the circumstances presented here, the Commission did not abuse its discretion in declining to advance petitioner's release date.

Petitioner argues that since the seriousness of a prisoner's offense is one factor used in setting the prisoner's release date initially, there is no rational basis for using the same factor a second time to deny advancement of the release date. The cases petitioner cites in support of the argument that "doubling up" on a single factor is arbitrary, capricious, and irrational, however, are distinguishable from the present case. *See Brach v. Nelson,* 472 F.Supp. 569, 574 (D.Conn.1979); *United States ex rel. Jacoby v. Arnold,* 442

---

**3.** Some changes were made in the regulation after the Commission received comments from interested parties. *See* 44 Fed.Reg. 55002–05 (Sept. 24, 1979). However, the Commission's statement accompanying the revised rule does not reveal any basic shift in the philosophy described above.

**310**

F.Supp. 144, 148–49 (M.D.Pa.1977); *Lupo v. Norton*, 371 F.Supp. 156, 162–63 (D.Conn.1974). In each of those cases what the court considered arbitrary was the use of the seriousness of the offense factor to set the initial guidelines for the length of a prisoner's sentence and then again to deny release after the prisoner had served the time specified in the guidelines. In those cases, in essence, the seriousness of the prisoner's offense had not changed, but what the authorities had previously believed warranted time served of X months was later believed to warrant time served of X + 1 months.

 The present case is different. Here, as in the cited cases, the seriousness of petitioner's offense was used to set his initial release date. However, the Parole Commission had not re-used that factor to extend that date. Rather, it had employed that factor as part of a balancing test to determine whether it is outweighed by other factors counseling in favor of earlier release. That is different from using the same factor twice.

Petitioner also argues that the seriousness of the offense factor has no place in the Superior Program Achievement decision. Since the program only permits a limited advancement of the release date, petitioner argues, that factor should play no role in the decision. If petitioner were correct, we wonder how the decision whether to advance a release date under the Superior Program Achievement regulations would be made. It is clear from the wording of the regulations that advancement was not meant to be mandatory for all prisoners who exhibit superior program achievement; were that intended, § 2.60(a) & (c) would not contain the word "may." The regulation plainly contemplates a balance between the inmate's achievement and other factors. If the seriousness of the offense were not a permissible "other factor," the regulation might well mean in practical effect that advancement of the release date is mandatory for all those exhibiting superior program achievement. Such was not intended by those who draft-

ed the regulations. Rather, it is evident from the regulations' history that seriousness of the offense was intended to be an element of the balance.

For the reasons stated above, the Parole Commission's decision did not violate the Commission's regulations, nor was it an abuse of discretion or arbitrary, capricious, or irrational. Nor did the decision violate petitioner's equal protection rights. Equal protection consists of the "right to be free from invidious discrimination." *See Harris v. McRae*, 448 U.S. 297, 322, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980). There is nothing invidious in classifying those prisoners with more serious offenses differently from those with less serious offenses for purposes of parole or early release, if that was what the Commission did here.

Respondents' motion to dismiss is granted, and petitioner's petition for a writ of habeas corpus is dismissed. On the court's motion, a certificate of probable cause is issued. 28 U.S.C. § 2253.